UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRUCE PARKER,

        Plaintiff,                 Case No. 2:18-cv-80

v.                                           Honorable Paul L. Maloney

CONNIE HORTON et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff filed a motion for a temporary restraining order (ECF No. 4).  Plaintiff's complaint alleges that Defendants violated his First Amendment right to be free from retaliation and his Fourteenth Amendment substantive due process rights.  Plaintiff also claims that Defendants engaged in a conspiracy to violate his rights.

        According to Plaintiff's complaint, he is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues Warden Connie Horton, Inspector Unknown Miller, Inspector Unknown Brown, Sergeant Unknown Martin, Corrections Officer Unknown De Stabile, Corrections Officer Unknown Eicher, Corrections Officer Unknown Simpson, Sergeant Unknown Belanger, Corrections Officer Unknown Green, Resident Unit Manager R. Batho, Lieutenant Unknown Bigger, Lieutenant Unknown Pawley, Corrections Officer Unknown Weems, and Corrections Officer Unknown Ford.

Plaintiff alleges on January 16, 2018, he was transferred to URF from the Carson City Correctional Facility. On the same day, Plaintiff mailed a letter to Defendants Horton, Miller, and Brown requesting protection from officers at URF who had previously threatened to have Plaintiff stabbed or hung if he ever returned to URF. Plaintiff never received a response. On January 17, 2018, two officers in the chow hall saw Plaintiff and stated:

> Oh I see [you're] back nigger you better not step out of your place like before when you were here or we'll pay gang bangers to stab you. Your days of talking back to white officers is over. I don't know what they allow you niggers to do over the bridge but up north we keep blacks in [their] place even smart ones like you. Oh yeah [you're] in Lime unit I have friends in there.

(ECF No. 1, PageID.6.) Plaintiff filed a grievance.

On January 19, 2018, Plaintiff was called into Lime Unit dayroom by Defendant Martin, who had several officers with him. They surrounded Plaintiff and Defendant Martin asked what Plaintiff's problem was and explained that he was referring to Plaintiff's kites and grievances. Defendant Martin told Plaintiff that if he filed another grievance, Plaintiff would end up in segregation. Plaintiff filed a grievance against Defendant Martin.

On January 22, 2018, Plaintiff filed a grievance on Defendants Miller and Brown for failing to protect him from an unsafe and racist environment. Plaintiff's grievance was improperly rejected as duplicative. On January 24, 2018, Defendant De Stabile asked Plaintiff for a shakedown search, and Plaintiff complied. During the shakedown, Defendant De Stabile asked Plaintiff how he wanted to "play it," and whether Plaintiff would be willing to sign off on the grievance against Defendant Martin. When Plaintiff refused, Defendant De Stabile stated that he would continue to target Plaintiff for misconducts until Plaintiff stopped filing grievances. Plaintiff then filed a grievance on Defendant De Stabile. Plaintiff also filed a grievance on Defendant Horton for failing to correct deficiencies in the physical layout of the prison which placed Plaintiff and other prisoners at a higher risk of being sexually assaulted. Defendant De

Stabile wrote a class III misconduct on Plaintiff claiming that he violated a housing rule by wearing a knitted hat in the housing unit.

On January 25, 2018, Defendant De Stabile conducted a retaliatory search of Plaintiff's cell and destroyed a completed motion for relief from judgment Plaintiff had prepared to file in the Kalamazoo County Circuit Court. Defendant De Stabile also destroyed pictures of Plaintiff's fiancée and his deceased brother and grandmother. Plaintiff filed a grievance which was improperly rejected as duplicative. Plaintiff also kited Defendant Horton regarding the retaliatory conduct of officers. On January 30, 2018, Plaintiff had a hearing on the class III misconduct written by Defendant De Stabile. Defendant Eicher conducted the hearing and found Plaintiff guilty, stating "I don't care what your evidence is or what the camera shows I'm finding you guilty because . . . I am tired of all of your grievances and complaints." Plaintiff received three days on top lock. The decision was upheld on appeal.

While Plaintiff was returning from dinner on January 30, 2018, Defendant Simpson stopped him for a shakedown, during which he required Plaintiff to remove his shoes and stand in mud and water. Once Defendant Simpson finished searching Plaintiff's shoes, he threw one of the shoes at Plaintiff and hit him in the left leg. Defendant Simpson threw the second shoe on the floor and told Plaintiff to "pick it up dog." When Plaintiff complained that he had been assaulted, Defendant Simpson said that Plaintiff would see what assault really was and that he was going to place a razor in Plaintiff's cell. Plaintiff filed a grievance.

On January 31, 2018, Plaintiff sent a kite to healthcare requesting treatment for a sexual assault at the hands of an unnamed officer seven to ten days prior. The kite was forwarded to the Inspector's office. Plaintiff states that he was suffering from pain after the unnamed officer stroked Plaintiff's penis, squeezed Plaintiff's testicles, and attempted to force a gloved finger into

Plaintiff's anus.  Plaintiff states that he noticed bleeding from his anus later when he attempted to use the restroom.  Plaintiff also sent complaints to the Michigan State Police, Governor Rick Snyder, Attorney General Bill Schuette, Michigan senators and representatives, the Department of Justice, MDOC Director Heidi Washington, and several other state officials.

On February 1, 2018, Plaintiff was called to the Inspector's office.  Defendants Miller, Brown, and Belanger were present, as was Deputy Warden David Isard.  Defendant Belanger questioned Plaintiff about the sexual assault.  Plaintiff asked Defendant Belanger if she would allow the investigation to be reassigned to a fair and impartial investigator because the last time that Plaintiff was confined at URF, Defendant Belanger told Plaintiff that prisoners could not be believed and that officers should not be punished for abusing convicts.  Defendant Belanger laughed and said that she still felt that way and would be writing a ticket on Plaintiff at the conclusion of "this Kangaroo Investigation."  When Plaintiff looked to Isard for help, he told Plaintiff that he would have to deal with Defendant Belanger.  Deputy Warden Isard also refused to call the Michigan State Police.  Plaintiff was then sent to healthcare, where he was given over-the-counter pain medication to treat the pain in his scrotum and anus.  On February 2, 2018, Plaintiff filed a grievance on Defendants Horton, Miller, and Brown for failing to protect him.

On February 4, 2018, Plaintiff sent a kite to Grievance Coordinator McLean requesting a step II form on the grievance filed by Plaintiff on February 2, but Defendant McLean refused, telling Plaintiff to seek the form from Defendants Belanger, Miller, or Brown.  On February 8, 2018, Plaintiff was called to the prison control center where Defendants Miller, Brown, Belanger, and Deputy Warden Isard and Michigan State Police Detective Sergeant Michael Schroeder were waiting.  Plaintiff states that the State Police became involved only after his family and fiancée made numerous phone calls and sent letters to both the police and the governor.

Plaintiff explained the situation to Sergeant Schroeder, after which Sergeant Schroeder smiled and told Plaintiff that he could leave.

On February 9, 2018, Plaintiff received a false misconduct for interfering with the administration of rules written by Sergeant Blemke at the behest of Defendant Horton. The misconduct was written in response to Plaintiff's January 17, 2018, grievance reporting officers for threatening conduct and the use of racial epithets. Plaintiff wrote a grievance on Defendant Horton, which was rejected as non-grievable. On February 11, 2018, Plaintiff sent a complaint to Defendant Horton requesting an impartial investigator for Plaintiff's sexual assault complaint. Plaintiff never received a response. On February 14, 2018, Plaintiff was moved from the east side of the prison to the westside, which is a dorm style setting.

On February 25, 2018, Defendant Green conducted a shakedown on Plaintiff, during which he took Plaintiff into a secluded shack an began to question Plaintiff about his sexual abuse complaint. Defendant Green asked Plaintiff who he thought he was and told him that if he did not drop his complaint, he would have Plaintiff's unit officer set him up. Defendant Green smacked Plaintiff on his buttocks and commented "you have a nice firm ass, I'll be sure to tell [Corrections Officer] Baker about you." Plaintiff filed a grievance on Defendant Green.

On February 28, 2018, Plaintiff received a false misconduct ticket for interference with the administration of rules based on a grievance that Plaintiff wrote on Defendant Martin for retaliation. On March 2, 2018, Defendant Batho conducted a hearing on Plaintiff's February 9, 2018, misconduct ticket. During the hearing, Defendant Batho told Plaintiff that he filed too many grievances, and that he was not going to review the camera or any evidence because Defendant Horton was pressuring him to find Plaintiff guilty. Plaintiff received three days on top lock. Plaintiff never received an appeal form.

On March 5, 2018, Plaintiff met with Mike D. Banks, a legal analyst for the Michigan Legislative Corrections Ombudsman's office, who promised to look into Plaintiff's complaints regarding staff at URF.  On March 6, 2018, Plaintiff was called to the control center to meet Defendant Belanger and Deputy Warden Isard concerning his February 25, 2018, complaint of sexual assault.  Plaintiff told Deputy Warden Isard that he did not want to speak to Defendant Belanger because she was biased against Plaintiff.  Deputy Warden Isard told Plaintiff that if he did not want to deal with Belanger, he could deal with no one.  During this discussion, Defendant Belanger went to her office and got appeal forms for Plaintiff's complaints.  When Plaintiff complained that they were untimely, Deputy Warden Isard said, "Oh well."

Later on March 6, 2018, Defendant Bigger conducted a hearing on the misconduct Plaintiff received for filing the grievance on Defendant Martin on January 19, 2018.  When Plaintiff attempted to offer evidence, Defendant Bigger said, "Oh you're the Parker that's been filing all of the bullshit sexual complaints and grievances.  I don't care what your evidence is or what it proves because in my eyes you're guilty based on you filing grievances."  Plaintiff was found guilty and given five days on top lock and ten days loss of privileges.  Plaintiff's appeal was denied.  Plaintiff filed grievances on Defendant Bigger and Defendant Belanger which were never processed.

On March 7, 2018, Plaintiff was interviewed by Michigan State Police Sergeant Michael Schroeder in the presence of Defendants Miller, Brown, and Belanger.  Plaintiff told Sergeant Schroeder about the February 25, 2018, assault by Defendant Green.  Plaintiff states that Sergeant Schroeder turned off his recording device and stated, "off the record Parker I do a lot of cases with MDOC especially this facility and I've come to know these officers . . . very well so I'm inclined to trust whatever they say and distrust you."  Plaintiff asked if he was serious, and

Sergeant Schroeder stated, "as a heart attack." Plaintiff filed a complaint against Sergeant Schroeder with the Michigan Attorney General's office and with Governor Snyder, but never received a response. Plaintiff was placed on modified access to the grievance procedure.

On March 9, 2018, Defendant Belanger wrote a misconduct on Plaintiff for interference with the administration of rules for reporting a sexual assault during a shakedown. Plaintiff requested a grievance form so that he could file a grievance on Defendant Belanger, but he never received a form. Plaintiff received a hearing on the misconduct on March 13, 2018. The Hearing Officer, Defendant Pawley, asked Plaintiff for his evidence and Plaintiff showed him the falsified PREA [Prison Rape Elimination Act] report. According to the report, Plaintiff had been at URF on January 1, 2018, but Plaintiff did not arrive at URF until January 16, 2018. Defendant Pawley checked the OTIS [Offender Tracking Information System] and said, "You're right, but I just spoke to [Sergeant] Belanger and Warden Horton and they told me to find you guilty anyway." Plaintiff asked Defendant Pawley to rid himself of his bias, and Defendant Pawley stated, "Listen you motherfucking cunt [we're] tired of your grievances and complaints and I'll never throw out a misconduct that my [co-workers] write whether it's right or wrong." Defendant Pawley told Plaintiff that he did not have any rights and called him a "nigger." Plaintiff was found guilty and given five days on top lock and thirty days loss of privileges.

On March 14, 2018, Administrative Assistant Beaulieu and Defendant Batho threatened Plaintiff and told him that Defendant Horton had directed staff to silence Plaintiff. They also mocked Plaintiff for being on modified access and told him that Grievance Coordinator McLean was an old friend. Plaintiff subsequently requested a grievance form from Grievance Coordinator McLean, to no avail.

On April 8-9, 2018, Plaintiff sent complaints to Defendants Horton, Miller, and Brown regarding threats against Plaintiff made by Corrections Officers Warner and Sturm while he was in food service. Plaintiff received a misconduct for interference with the administration of rules in response to his complaints. On April 15, 2018, Plaintiff received a misconduct from Defendant Pawley for destruction and misuse of property based on the fact that Plaintiff sent out fifty-six emails/letters on Jpay while on sanctions. Plaintiff concedes that he violated sanctions by engaging in this conduct, but he claims that other prisoners engaged in the same conduct and were not punished, so that the motive for the misconduct was retaliation. Plaintiff states that his ability to send email and/or letters to his family was suspended on April 15, 2018, so that Plaintiff was completely unable to communicate with his daughters. Plaintiff filed a grievance on Defendant Pawley. On April 18, 2018, Plaintiff had a hearing on the destruction and misuse of property misconduct. During the hearing, Defendant Batho told Plaintiff to plead guilty or he would be placed in segregation. Plaintiff pleaded guilty and was given two days on top lock. On May 17, 2018, Plaintiff filed a grievance on Defendants Horton, Miller, Brown, and Pawley for blocking Plaintiff's access to the PREA complaint hotline.

On April 30, 2018, Plaintiff asked Defendant Horton why she was always targeting him. Defendant Horton then stated to Corrections Officer Wech, "Didn't I tell you to silence this crying ass prisoner who's always filing grievances and complaining? I don't care what you have to do to silence him hell get another prisoner to kick his ass and tell them that I'll make sure [they're] not written a misconduct." Plaintiff requested a grievance form on the issue, but was denied. Plaintiff reported the incident to the PREA Manager Charles Carlson by sending a letter, but did not receive a response.

On May 16, 2018, Defendant Weems wrote a false misconduct on Plaintiff for returning to the food service line in order to ask for extra butter. Plaintiff states that Defendant Weems asked him if he was going to stop writing grievances, or if he needed to plant contraband in Plaintiff's cell. Plaintiff was found "not guilty" of the class III misconduct on May 19, 2018. Plaintiff filed a grievance on Defendant Weems. On May 29, 2018, Plaintiff apologized to another prisoner for accidently stepping on his foot and Defendant Ford overheard and asked Plaintiff what he was whispering about. Plaintiff explained that he was apologizing for stepping on the other prisoner's foot and Defendant Ford asked to see his identification. Plaintiff complied. Defendant Ford stated that Plaintiff was the prisoner who liked filing complaints about officers abusing him and asked if he had any contraband in his cell. Plaintiff said "no." Defendant Ford then stated "You may have some in there later on after I come pay you a visit." Plaintiff subsequently reported the statement to Sergeant Gunroe, who was at the officer's desk with Defendant Green. Sergeant Gunroe said he would talk to Defendant Ford and to go finish eating. While Plaintiff was eating, Defendant Ford hovered around in an attempt to intimidate Plaintiff. Plaintiff approached Sergeant Gunroe a second time regarding Defendant Ford's behavior and Defendant Ford followed him outside. Defendant Ford asked Sergeant Gunroe why he had let Plaintiff sit back down. As Plaintiff was leaving food service, Defendant Ford stopped him and requested a shakedown. During the shakedown, Defendant Ford ran his hands over Plaintiff's crotch and stated, "so this is what all the hooting and hollering is about, it's not even that big." Defendant Ford then ordered Plaintiff to "get naked" or he would use a taser on him. Plaintiff began to undress and removed his shirt. Plaintiff began to remove his shorts, at which time Defendant Ford said "Okay enough I seen [sic] what I wanted to see you better stop filing grievances or next time it'll be worse."

Plaintiff filed a PREA complaint on the Prison's PREA hotline. Plaintiff also requested a grievance form, to no avail.

Plaintiff claims that while confined at URF, he was forced to perform oral sex for a corrections officer against his will. Plaintiff protested, but the officer told him that if he did not comply, he would be placed in segregation and starved by his co-workers and forced to commit suicide. So Plaintiff complied. Plaintiff states that as a result of the sexual assaults he received while at URF, he has been forced to get psychological counseling and treatment. Plaintiff also asserts that all of the misconduct tickets he has received have been either class II or class III, so that the acting hearing officers were not acting in a judicial capacity and are not immune from suit.

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Planned Parenthood Association v. City of Cincinnati*, 822 F.2d 1390, 1393 (6th Cir. 1987). In exercising that discretion, the court must consider and balance four factors:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2. Whether the movant has shown irreparable injury.

3. Whether the preliminary injunction could harm third parties.

4. Whether the public interest would be served by issuing a preliminary injunction.

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be carefully balanced by the district court in exercising its equitable powers. *Id.*

Moreover, where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive

relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances.  *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2d Cir. 1969), *cert. denied*, 394 U.S. 999 (1969).  *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action.  *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989).  A review of the materials of record fails to establish a substantial likelihood of success with respect to plaintiff's claim that the defendants have violated his federal rights.

In Plaintiff's motion, he states that he is seeking an order "enjoining the defendants, their successors in office, agents and employees and all other persons acting in concert and participation with them, from retaliating against plaintiff and from sexually and physically assaulting plaintiff or conducting skewed and bias investigations and finally filing file [sic] misconducts and disciplinary reports against plaintiff.  The reasons therefore are set forth in the plaintiff's declaration and brief in support of this motion."  In Plaintiff's brief in support, he reasserts the allegations in his complaint and states that an injunction will protect him from "further and future harm" from Defendants.

Plaintiff attaches signed statements of other prisoners, responses by various officials to Plaintiff's complaints and grievances, and a declaratory ruling from the MDOC. Prisoner Tavares Wesley #239339 states that when he listed Plaintiff as a witness for his own PREA complaint, Defendant Belanger became angry and threatened him by using Plaintiff as an example for what could happen when prisoners file complaints.  Defendant Belanger then told

Prisoner Wesley that he had responded to Plaintiff's grievances by writing a misconduct on him and making sure that Plaintiff became a target at URF. (ECF No. 5-2, PageID.62.)

In his declaration, Prisoner Ober Ellis #230146 states that that on February 8, 2018, he was called to the control center to be interviewed as a witness for Plaintiff on a PREA complaint. When Plaintiff arrived, Defendant Belanger stated "I would advise you not to give any statement in support of Parker's allegations of being sexually assaulted by a[n] officer because if you do you will become a target like him." Defendants Miller and Brown and Michigan State Police Sergeant Schroeder were present and merely smiled. (ECF No. 5-2, PageID.63.) Prisoner Donnell Williams #225280 states that he filed three PREA complaints which was investigated by Defendant Belanger. All three were found to lack merit, but Prisoner Williams did not receive a misconduct for filing any of the complaints. (ECF No. 5-2, PageID.64.)

In his statement, Prisoner Daniel Perry #135959 indicates that he observed the May 29, 2018, pat down of Plaintiff by Defendant Ford, and overheard Defendant Ford tell Plaintiff that he'd better stop filing grievances. (ECF No. 5-2, PageID.65.) Prisoner Kelvin Meador #137224 states that he overheard Defendant Bigger tell Plaintiff that he was guilty based on the fact that he had filed grievances. (ECF No. 5-2, PageID.66.)

Plaintiff's other exhibits show that he has repeatedly complained of sexual assault and retaliatory treatment by the named Defendants via the grievance system and by filing complaints with other agencies. (ECF No. 5-2, PageID.67-79.) In addition, Plaintiff attaches a misconduct report showing that a ticket written by Defendant Weems was dismissed for lack of merit on May 19, 2018, and that Plaintiff filed an unsuccessful grievance claiming that the only reason for the misconduct was to retaliate against him. (ECF No. 7-1, PageID.86-87.)

The undersigned notes that Plaintiff is seeking an order to prevent speculative future sexual harassment and retaliation.  Prison officials already have a constitutional obligation to ensure that a prisoner is not subject to harassment or retaliation.  Ordering a prison official to comply with the United States Constitution serves no purpose.  Plaintiff's request is unnecessary and redundant.  Furthermore, Plaintiff has failed to establish that he will suffer irreparable harm absent injunctive relief.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *See Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

Because Plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, I recommend that Plaintiff's motion for injunctive relief be denied.


Dated: <u>August 15, 2018</u>            <u>         */s/ Timothy P. Greeley*         </u>
                                        TIMOTHY P. GREELEY
                                        UNITED STATES MAGISTRATE JUDGE


### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).