UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRUCE PARKER #593090,                          Case No. 2:18-cv-00080

                Plaintiff,                          Hon. Paul L. Maloney
                              U.S. District Judge

    v.

CONNIE HORTON, et al.,

                Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### **Introduction**

This is a civil rights action brought by state prisoner Bruce Parker pursuant to 42 U.S.C. § 1983. Parker alleges that Defendants Warden Connie Horton, Inspector John Miller, Inspector Mike Brown, Sergeant Duncan Martin, Corrections Officer Derek Stabile, Corrections Officer Daniel Eicher, Corrections Officer Aaron Simpson, Sergeant Lisa Belanger, Corrections Officer Jeffrey Green, Resident Unit Manager Rob Batho, Lieutenant Crystal Bigger, Lieutenant Robert Pawley, Corrections Officer Billy Weems, and Corrections Officer Michael Ford violated his First and Eighth Amendment rights by conspiring and retaliating against him for filing grievances and failing to protect him while he was incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.

Defendants have filed a motion for summary judgment based solely on Parker's failure to exhaust administrative remedies, and Parker has replied. (ECF Nos. 53, 56.) Parker has also filed a motion to strike (ECF No. 57), a motion for declaratory judgment (ECF No. 60), and a motion for spoliation sanctions (ECF No. 67). While the motion to strike and motion for declaratory judgment were filed in direct response to Defendants' Motion for Summary Judgment and are addressed below, Parker's motion for spoliation sanctions is another issue that will be addressed in a separate order.

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court: (1) grant in part and deny in part Defendants' Motion for Summary Judgment, (2) deny Parker's motion to strike, and (3) deny Parker's motion for declaratory judgment. Acceptance of this Report and Recommendation will result in the dismissal of several of Parker's civil conspiracy, retaliation, and failure to protect claims, as well as the overall dismissal of Defendant Eicher.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions

under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal

review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, No. 1:07-cv-004, 2007 WL 3244075, at *5 (W.D. Mich. Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (eff. date 07/09/07, superseded on 03/18/19), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for

filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct,

whether a Class I, Class II or Class III misconduct[1], the inmate must first raise the issue during the misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, No. 1:12-cv-1341, 2014 WL 1607431 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also

---

[1] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### Plaintiff's Allegations[3]

Parker's allegations are summarized in the table below.

| Count No. | §1983 Claim | Allegation(s) | Defendant(s) | Date or Date Range of Incident(s) |
|---|---|---|---|---|
| One | Retaliation | Parker was threatened with segregation if he filed another grievance.[4] | Martin | January 19, 2018 |
| Two | Failure to Protect | Inspectors Miller and Brown failed to protect Parker from violent and overtly racist environments.[5] | Miller and Brown | January 22, 2018 |
| Three | Retaliation | During a shakedown,[6] an officer threatened Parker with Misconduct | Stabile | January 24, 2018 |

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

[3] Some of the dates in Parker's Complaint are inconsistent with the dates of the grievances. In the interest of clarity, the dates corresponding to Parker's allegations are taken directly from the complaint.

[4] (ECF No. 1, PageID.6.)

[5] (*Id.* at PageID.7.)

[6] A "shakedown" is another term for a search, and may include a "patdown search," involving a brief inspection of a prisoner's clothing and items that he or she is carrying, or a "clothed body search," involving not only a prisoner's clothing and items but also his or her mouth, ears, nasal cavity, hair, etc. MDOC PD 04.04.110 ¶ G (eff. date 03/01/19).

| Count No. | §1983 Claim | Allegation(s) | Defendant(s) | Date or Date Range of Incident(s) |
|---|---|---|---|---|
| | | Reports if he continued to write grievances. Later that day, the same officer wrote Parker a false Misconduct Report.[7] | | |
| Four | Failure to Protect | The warden failed to correct deficiencies in the physical structure of the prison that rendered inmates vulnerable to sexual assault. | Horton | January 24, 2018 |
| Five | Retaliation | An officer conducted a search of Parker's cell and destroyed some of Parker's photographs and legal documents.[8] | Stabile | January 25, 2018 |
| Six | Retaliation | During the hearing on the January 24, 2018 Misconduct Report written by Defendant Stabile, the Hearing Officer found Parker guilty, stating "I don't care what your evidence is. . . I am tired of all of your grievances and complaints."[9] | Eicher | January 30, 2018 |
| Seven | Retaliation | During a shakedown, an officer threw Parker's shoes at him and called him a dog. When Parker accused the officer of assault, the officer threatened to put a razor in Parker's cell.[10] | Simpson | January 30, 2018 |
| Eight | Failure to Protect | Prison officials were put on notice of Parker's need for protection from existing harm and nevertheless failed to protect him. | Horton, Miller, and Brown | February 2, 2018 |
| Nine | Retaliation | Parker received a false Misconduct Report at | Horton | February 9, 2018 |

---

[7]  (ECF No. 1, PageID.7.)

[8]  (*Id.* at PageID.7-8.)

[9]  (*Id.*)

[10]  (*Id.* at PageID.9.)

| Count No. | §1983 Claim | Allegation(s) | Defendant(s) | Date or Date Range of Incident(s) |
|---|---|---|---|---|
| | | the request of the Warden.[11] | | |
| Ten | Retaliation | During a shakedown, an officer began to question Parker about his PREA complaint and threatened to have another officer set him up if he did not have the PREA complaint dropped. The officer then smacked Parker's buttocks.[12] | Green | February 25, 2018 |
| Eleven | Retaliation | Parker received a false Misconduct Report at the request of the Warden.[13] | Horton | February 28, 2018 |
| Twelve | Retaliation | A Misconduct Hearing Officer found Parker guilty of the February 9, 2018 Misconduct Report because Parker filed too many grievances, and the Warden wanted Parker to be found guilty.[14] | Batho | March 2, 2018 |
| Thirteen | Retaliation | A Misconduct Hearing Officer found Parker guilty of the February 28, 2018 Misconduct Report because he was "the one filing all of the bullshit sexual complaints and grievances."[15] | Bigger | March 6, 2018 |
| Fourteen | Retaliation | Parker was written a false misconduct based on his sexual assault complaints and his grievances against Sgt. Belanger.[16] | Belanger | March 9, 2018 |

[11] (*Id.* at PageID.11.)

[12] (*Id.* at PageID.13.)

[13] (*Id.*)

[14] (*Id.*)

[15] (*Id.* at PageID.14-15.)

[16] (*Id.*)

| Count No. | §1983 Claim | Allegation(s) | Defendant(s) | Date or Date Range of Incident(s) |
|---|---|---|---|---|
| Fifteen | Civil Conspiracy; Retaliation | A Hearing Officer agreed that the March 9, 2018 Misconduct Report written against Parker was false but found Parker guilty anyways in order to appease the Warden and the officer who wrote the Misconduct Report.[17] | Pawley, Belanger, and Horton | March 13, 2018 |
| Sixteen | Retaliation | Parker was the only one to receive a Misconduct Report for misuse of the Jpay system while on sanctions even though other inmates were also abusing the system.[18] | Pawley | April 15, 2018 |
| Seventeen | Retaliation | A Hearing Officer threatened to put Parker in segregation if he did not plead guilty to the April 15, 2018 Misconduct Report that Defendant Pawley had written, so Parker pled guilty.[19] | Batho | April 18, 2018 |
| Eighteen | Retaliation | Parker received a false Misconduct Report.[20] | Weems | May 16, 2018 |
| Nineteen | Civil Conspiracy; Retaliation | Prison officials blocked Parker's access to the PREA complaint hotline.[21] | Horton, Miller, Brown, and Pawley | May 17, 2018 |
| Twenty | Retaliation | During a shakedown, Parker was sexually assaulted and then ordered to undress by an officer.[22] | Ford | May 29, 2018 |

---

[17] (*Id.* at PageID.17.)

[18] (*Id.*)

[19] (*Id.* at PageID.19.)

[20] (*Id.* at PageID.20.)

[21] (*Id.* at PageID.19.)

[22] (*Id.* at PageID.20-23.)

### Grievances Identified as Relevant by Defendants

In their motion for summary judgment, Defendants identified several grievances that Parker filed with the MDOC.  They claim that a review of these grievances will demonstrate that Parker has failed to exhaust his administrative remedies.  These grievances are summarized below.

| Grievance No. | Person(s) Named | Allegation(s) | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-18-01-0252-17a[23] | Martin | Retaliation | January 19, 2018 | Denied | Denied | Denied |
| URF-18-01-0256-28A[24] | Martin | Retaliation | January 16, 2018 | Rejected | Rejection Upheld | Rejection Upheld |
| URF-18-01-0303-27A[25] | Stabile | Retaliation | January 24, 2018 | Rejected | Rejection Upheld | Rejection Upheld |
| URF-18-01-0293-28K[26] | Horton | Failure to correct prison conditions rendering inmates vulnerable to sexual assault. | January 24, 2018 | Rejected | Rejection Upheld | Rejection Upheld |
| URF-18-01-0302-17B[27] | Stabile | Retaliation | January 25, 2018 | Denied | Denied | Denied |
| URF-18-02-0375-17B[28] | Simpson | Retaliation | January 30, 2018 | Denied | Denied | Denied |
| URF-18-03-0705-27A[29] | Horton | Retaliation | February 8, 2018 | Rejected | Rejection Upheld | Rejection Upheld |
| URF-18-03-0709-27A[30] | Bigger | Retaliation | March 6, 2018 | Rejected | Rejection Upheld | Rejection Upheld |
| URF-18-04-1209-15z[31] | Pawley | Retaliation | April 15, 2018 | Denied | Denied | Denied |
| URF-18-06-1557-17A[32] | Weems | Retaliation | May 16, 2018 | Denied | Denied | Denied |
| URF-18-06-1556-23Z[33] | Horton, Miller, Brown, and Pawley | Retaliation | Unknown- May 17, 2018 | Denied | Denied | Denied |

[23]  (ECF No. 54, PageID.353.)

[24]  (*Id.* at PageID.385.) While Defendants argue that this grievance was a proper duplicate of URF-18-01-0252-17a (*Id.*), Parker contends that the grievance was actually against Defendants Miller and Brown, asserting a claim of failure to protect (Count Two) and using the incident with Defendant Martin as an example of conditions to which he was subjected (ECF No. 56, PageID.414.)

[25]  (ECF No. 54, PageID.379.)

[26]  (*Id.* at PageID.367.)

[27]  (*Id.* at PageID.373.)

[28]  (*Id.* at PageID.347.)

[29]  (*Id.* at PageID.328.)

[30]  (*Id.* at PageID.334.)

[31]  (*Id.*)

[32]  (*Id.* at PageID.252.)

[33]  (*Id.*)

## Misconduct Appeals Identified by Defendants

Defendants also identified several Misconduct Appeals in which Parker asserted claims. They contend that a review of these documents will demonstrate that Parker has failed to exhaust his administrative remedies.  These Misconduct Appeals are summarized below.

| Person(s) Named | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| De Stabile[34] | Retaliation | January 24, 2018 | January 30, 2018 | Guilty | Denied |
| Horton[35] | Retaliation | February 9, 2018 | March 2, 2018 | Guilty | N/A |
| Bigger[36] | Retaliation | February 28, 2018 | March 6, 2018 | Guilty | Denied |
| Pawley[37] | Retaliation | April 15, 2018 | April 18, 2018 | N/A | N/A |

## Additional Grievances Identified by Parker

In Parker's complaint and response to Defendants' motion for summary judgment, Parker identified additional grievances he filed with the MDOC.  These grievances are summarized below.

---

[34] (ECF No. 54-3, PageID.407-09.); Parker also contends that Defendant Eicher, the Hearing Officer for the misconduct hearing, found him guilty as an act of retaliation for filing grievances (Count Six). (ECF No. 1, PageID.8.)

[35] (*Id.* at PageID.394-95.) Parker also asserts a claim of retaliation against the Hearing Officer, Defendant Batho, for finding him guilty of the Misconduct Report in order to retaliate against him and appease the Warden (Count Twelve). (ECF No. 1, PageID.13.)

[36] (ECF No. 54-3. at PageID.397-98.)

[37] (*Id.* at PageID.405.) Parker pled guilty to the allegations within the April 15, 2018 Misconduct Report written by Defendant Pawley. Parker alleges that he did so because Defendant Batho threatened to put him in segregation if he did not plead guilty (Count Seventeen). (ECF No. 1, PageID.19.)

| Grievance No. | Person(s) Named | Allegation(s) | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| URF-18-02-23668-PREA-P[38] | Horton, Miller, and Brown | Failure to Protect | January 16, 2018 - February 2, 2018 | Unknown | Unknown | N/A |
| URF-18-02-23928-PREA-P[39] | Green | Retaliation | February 25, 2018 | Denied[40] | Unknown | N/A |
| PREA Hotline Complaint[41] | Ford | Retaliation | May 19, 2018 | N/A | N/A | N/A |

## Additional Misconduct Appeals Identified by Parker

Parker identified additional Appeals that he filed with MDOC. These Misconduct Appeals are summarized below.

| Person(s) Named | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Misconduct Hearing Results | Misconduct Appeal Results |
|---|---|---|---|---|---|
| Belanger, Horton, and Pawley[42] | Retaliation; Civil Conspiracy | March 9, 2018 | March 13, 2018 | Guilty | Denied |
| Weems[43] | Retaliation | May 16, 2018 | May 19, 2018 | Not Guilty | N/A |

## Analysis

Defendants concede that Parker exhausted his administrative remedies with regards to the following counts:

---

[38]  *(Id.* at PageID.11.) As Parker explains in his response to Defendants' Motion for Summary Judgment, PREA grievances follow a different, two-step process that Defendants do not discuss. (ECF No. 56, PageID.414); *see* MDOC P.D. 03.03.140 ¶ EE (eff. date 04/24/2017). As such, the results of these grievances are unclear.

[39]  (ECF No. 1, PageID.13.)

[40]  (ECF No. 1-1, PageID.29.)

[41]  (ECF No. 1, PageID.22.)

[42]  *(Id.* at PageID.427.)

[43]  (ECF No. 1, PageID.20.)

1. Count Three: retaliation claim against Defendant Stabile (grievance #URF-18-01-0303-27A) (ECF No.54, PageID.257);

2. Count Four: failure to protect claim against Defendant Horton (grievance #URF-18-01-0293-28k) (*Id.* at PageID.255);

3. Count Five: retaliation claim against Defendant Stabile (grievance #URF-18-01-0302-17B) (*Id.* at PageID.256);

4. Count Seven: retaliation claim against Defendant Simpson (grievance #URF-18-02-0375-17B) (*Id.* at PageID.254); and

5. Count Thirteen: retaliation claim against Defendant Biggers (*Id.*);

Parker concedes that grievance #URF-18-03-0705-27A was properly rejected as non-grievable, thereby conceding that Count Nine was not properly exhausted. (ECF No. 56, PageID.412.)

With respect to Counts Eight, Ten, and Twenty, Defendants broadly assert Plaintiff's failure to exhaust in their motion for summary judgment. In response, Parker identifies two PREA grievances and a PREA hotline complaint through which he claims to have adequately exhausted his administrative remedies. Parker claims to have exhausted his failure to protect claim against Defendants Horton, Miller, and Brown in grievance #URF-18-02-23668-PREA-P (ECF No. 56, PageID.414), his retaliation claim against Defendant Green in grievance #URF-18-02-23928-PREA-P (*Id.*), and his retaliation claim against Defendant Ford in his PREA hotline

complaint[44] (ECF No. 56-2, PageID.430-32). Defendants did not file a response to these allegations. As stated above, a prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones*, 549 U.S. at 212-16. Because the Court has been left to wonder whether these claims have been properly exhausted through administrative processes, the undersigned respectfully recommends to the Court that there is an issue of material fact concerning the exhaustion of these claims and summary judgment is therefore not appropriate.

In contrast to the ambiguity of Counts Eight, Ten, and Twenty, it is immediately apparent upon review of the record that Parker exhausted his administrative remedies for the counts discussed below.

### *Counts Fourteen and Fifteen*

The documents associated with Parker's claim of retaliation against Defendant Belanger demonstrate that Parker exhausted not only his retaliation claim against Defendant Belanger but also his retaliation and civil conspiracy claims against Defendant Belanger, Pawley, and Horton. Parker's March 13, 2018 Misconduct Appeal is shown below.

---

[44] Parker did not file a PREA grievance or complete the two-step process required to exhaust this claim. MDOC P.D. 03.03.140 ¶ EE (eff. date 04/24/2017). However, Parker argues that his claims against Defendant Ford were properly exhausted because: (1) Parker mailed a grievance request to Grievance Coordinator McLean but was never provided one (ECF No. 56-2, PageID.430), (2) Parker made a complaint through the PREA hotline that resulted in an investigation (*Id*. at PageID.431) and (3) Defendant Belanger told him that he could not file an appeal because the investigation was not initiated through a PREA grievance (*Id*. at PageID.432).

MICHIGAN DEPARTMENT OF CORRECTIONS                                                                CSJ-274
**CLASS II AND CLASS III MISCONDUCT APPEAL**                                                       10/10
                                                                                                  4835-3274

3/20/18

| INSTRUCTIONS |
| --- |
| 1. This form is to be used SOLEY for appealing Class II and Class III hearing decisions. If a Class II or Class III decision was combined with a Class I hearing decision, a Request for Rehearing (CSJ-418) must be filed. |
| 2. This form must be submitted within 15 calendar days after receipt of the hearing officer's written decision. |
| 3. Class II hearing decisions are appealed to the Deputy Warden. |
| 4. Class III hearing decisions are appealed to the Assistant Deputy Warden (ADW). (NOTE: Prisoners at Woodland Center Correctional Facility (WCC) and the Women's Huron Valley Correctional Facility (WHV) appeal to a Captain designated by the Warden.) |
| 5. State your reason for appeal. |
| 6. Attach a copy of misconduct and hearing report. |

A rehearing shall be ordered if any of the following are found to have occurred:

   a. The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the prisoner.
   b. The prisoner's due process rights were violated.
   c. The decision of the hearing officer is not supported by the evidence on the record.

| Prisoner's Number | Name | Block/Unit Number | Cell/Room Number | Date of Incident |
| --- | --- | --- | --- | --- |
| 593090 | Bruce-X Parker | C | 131 | 2-1-18 |

| Date of Hearing | Misconduct Class: ☒ II ☐ III  Charge(s) | Sentence |
| --- | --- | --- |
| 3-13-2018 | (423) Interferring with the Admin. of Rules | 5 dys T/L; 30 dys LOP |

BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL:

Appellant appeals based on the hearing officer Lt. Pawley being bias and not conducting a fair and impartial hearing based on his personal prejudices against appellant and external pressures from his supervisor Warden Connie Horton and friend Sgt. Belanger which prevented him from basing his decision on the preponderance of the evidence on the record or evidence offered by appellant to rebut the false and retaliatory misconduct written by Sgt. Belanger and approved by Warden Horton and thus denying appellant due process and violating P.D. 03.03.105(WWW).
Hearings officer Lt. Pawley asked plaintiff for his evidence and once appellant surrendered his evidence which consisted of a PREA investigative report AIPAS # 23668 which showed that this report was the basis of Sgt. Belanger's falsified misconduct which had the date of incident she investigated to be 1/1/18 which is a date appellant wasn't at URF. Lt. Pawley stated to appellant "Your right but I just spoke to SGt. Belanger and she and Warden Horton told me to find you guilty anyway." Appellant asked Lt. Pawley to divest himself of this conflict of interest and became enraged like a wild wolf and stated to appellant "I'll never throw out a misconduct my co/worker writes whether it's wrong or right. Parker were tired of your black ass thinking you have rights here because as you see you don't so so hell with your evidence." (do not write below this line)

APPEAL RESPONSE:

(ECF No. 56-2, PageID.427.) Parker's appeal clearly asserts that the Misconduct Report written by Defendant Belanger was retaliatory in nature in addition to asserting that Defendants Horton and Belanger directed Defendant Pawley to find Parker guilty in retaliation for Parker's numerous complaints. Therefore, the undersigned recommends that Parker exhausted his administrative remedies with respect to these claims.

*Count Eighteen*

The documents associated with Parker's claim of retaliation against Defendant Weems demonstrate that Parker exhausted his claim of retaliation against

Defendant Weems. This claim is different from Parker's previous misconduct-related claims in that the Misconduct Hearing Officer agreed that Defendant Weems' Misconduct Report was false and dismissed the misconduct. (ECF No. 7-1, PageID.86.) Because the misconduct was dismissed, effectively granting Parker his requested remedy, the undersigned recommends that Parker had no basis on which to appeal and thus properly exhausted his retaliation claim against Defendant Weems.[45]

On the other hand, it is immediately apparent upon review of the record that Parker failed to exhaust his administrative remedies with respect to other claims.

*Count Six*

The documents associated with Parker's claim of retaliation against Defendant Eicher demonstrate Parker's failure to exhaust his administrative remedies. Parker's Misconduct Appeal following Defendant Eicher's allegedly retaliatory finding of guilt is shown below.[46]

---

[45] Defendants point out that Parker had not completed the three-step grievance process with respect to grievance #URF-18-06-1557-17A, in which he asserted this claim, prior to filing this suit. (*Id*. at PageID.252-53.) However, the completion of the grievance process with respect to this grievance is irrelevant as issues concerning the misconduct process are non-grievable and must be exhausted through the misconduct hearing process. *Siggers*, 652 F.3d at 693-94.

[46] Parker's Misconduct Appeal to the January 30, 2018 Misconduct Hearing Report reads, "Progressive Discipline not followed: Appellant appeals first and foremost based on the Misconduct Report itself being retaliatory and in response to appellant filing grievances against prohibited staff conduct particularly the Racial Discrimination that is prevalent at Chippewa Facility in violation of P.D. 03.03.130 (L) which states 'Discrimination based on personal prejudices, such as race, color, national origin is prohibited.' Appellant contends he never violated Housing Unit Rules #33 as I removed my hat prior to entering the unit while in between the outside and inside partitions, thus this misconduct violates due process as I violated no rules

1.31.18

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-274
10/10
4835-3274

**CLASS II AND CLASS III MISCONDUCT APPEAL**

INSTRUCTIONS
1. This form is to be used SOLEY for appealing Class II and Class III hearing decisions. If a Class II or Class III decision was combined with a Class I hearing decision, a Request for Rehearing (CSJ-418) must be filed.
2. This form must be submitted within 15 calendar days after receipt of the hearing officer's written decision.
3. Class II hearing decisions are appealed to the Deputy Warden.
4. Class III hearing decisions are appealed to the Assistant Deputy Warden (ADW). (NOTE: Prisoners at Woodland Center Correctional Facility (WCC) and the Woman's Huron Valley Correctional Facility (WHV) appeal to a Captain designated by the Warden.)
5. State your reason for appeal.
6. Attach a copy of misconduct and hearing report.

A rehearing shall be ordered if any of the following are found to have occurred:
   a. The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the prisoner.
   b. The prisoner's due process rights were violated.
   c. The decision of the hearing officer is not supported by the evidence on the record.

| Prisoner's Number | Name | Block/Unit Number | Cell/Room Number | Date of Incident |
|---|---|---|---|---|
| 593090 | Bruce-X Parker | Lime | 215 | 1-24-2018 |

| Date of Hearing | Misconduct Class: ☐ II ☐ III Charge(s) | Sentence |
|---|---|---|
| 1-30-2018 | VPR Housing #33 | 3 days TOPLock |

BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL: ~~Progressive Discipline not followed~~
Appellant Appeals First and Foremost based on the misconduct itself being retaliatory and in response to Appellant filing grievances against Protected staff conduct particularly the Racial Discrimination that is prevalent at Chippewa Facility in violation of P.D. 03.03.130(L) which states "Discrimination based on personal prejudices such as race, color, national origin is prohibited". Appellant contends he never violated Housing unit Rule #33 as I was carrying hat prior to entering the unit ~~white~~ in between the outside and inside partitions thus this misconduct violates due process as I violated No rule's And it's writing was premised on me engaging in Constitutionally protected conduct in violation of P.D. 03.03.105 (www)(2)(3). Appellant contends that c/o De Stabile openly told me that if I didn't sign off on my grievance against Sgt. Martin from 1/19/18 he would continue to write me up and Frame me with False misconducts And he knows I'm going to get found guilty because his co/workers would hear me on it. Check camera to verify incident never occurred but numerous inmates around me had their hats on but he didn't write them up. (do not write below this line) Why? BIAS, Retaliation.

(ECF No. 54-8, PageID.407.) Because Parker did not assert any claim against

Defendant Eicher within his Misconduct Appeal, as required in order to exhaust a

claim of retaliation against a Hearing Officer based on his or her decision in a

---

and its writing was premised on me engaging in Constitutionally protected conduct in violation of P.D. 03.03.105 (www)(2)(3). Appellant contends that c/o De Stabile openly told me that if I didn't sign off on my grievance against Sgt. Martin from 1/19/18 he would continue to write me up and frame me with false misconducts and he knows I'm going to get found guilty because his coworkers would never hear me on it. Check camera to verify incident never occurred but numerous inmates around me had their hats on but he didn't write them up. Why? Bias. Retaliation." (ECF No. 54-8, PageID.407.)

misconduct hearing, Parker has not exhausted his retaliation claim against Defendant Eicher. *Siggers*, 652 F.3d at 693-94.

### Count Eleven

The documents associated with Parker's claim of retaliation against Defendant Horton for directing an officer to file a false misconduct against Parker on February 28, 2018 also demonstrate Parker's failure to exhaust his administrative remedies. Parker was found guilty at the March 6, 2018 misconduct hearing and his subsequent Misconduct Appeal is attached below.[47]

---

[47] The January 30, 2018 Misconduct Appeal reads, "Appellant appeals based on the Hearing Officer's decision not being based on a preponderance of the evidence which violates my due process contrary to P.D. 03.03.105(www)(2)(3). Appellant contends that Lt. Bigger's findings is [sic] silent as to how she came to the conclusion of Appellant's guilty besides her making a credibility determination and accepting Sgt. Martin's rebuttal as fact which is contrary to P.D. 03.03.105B (Attachment B) which states, 'If written as a result of a grievance it must be shown that prisoner knew allegations was false when he made them. Ordinarily a statement of a Staff member refuting the claim will not be sufficient. Furthermore, Lt. Bigger told me that her guilty finding was because or in retaliation of me filing grievances and that she didn't care what my evidence proved. (Bias & Partial)." (ECF No. 54-5, PageID.398.)

3/13/18

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-274
10/10
4835-3274

**CLASS II AND CLASS III MISCONDUCT APPEAL**

INSTRUCTIONS
1. This form is to be used SOLEY for appealing Class II and Class III hearing decisions. If a Class II or Class III decision was combined with a Class I hearing decision, a Request for Rehearing (CSJ-418) must be filed.
2. This form must be submitted within 15 calendar days after receipt of the hearing officer's written decision.
3. Class II hearing decisions are appealed to the Deputy Warden.
4. Class III hearing decisions are appealed to the Assistant Deputy Warden (ADW). (NOTE: Prisoners at Woodland Center Correctional Facility (WCC) and the Women's Huron Valley Correctional Facility (WHV) appeal to a Captain designated by the Warden.)
5. State your reason for appeal.
6. Attach a copy of misconduct and hearing report.

A rehearing shall be ordered if any of the following are found to have occurred:
   a. The hearing was not conducted pursuant to Department policies and procedures and the departure from policy and procedure resulted in material prejudice to the prisoner.
   b. The prisoner's due process rights were violated.
   c. The decision of the hearing officer is not supported by the evidence on the record.

| Prisoner's Number | Name | Block/Unit Number | Cell/Room Number | Date of Incident |
|---|---|---|---|---|
| 593090 | Bruce X Parker | C | 131 | 1-19-18 |

| Date of Hearing | Misconduct Class: ☑ II ☐ III  Charge(s) | Sentence |
|---|---|---|
| 3-6-2018 | Interference with the Admin. Of Rules C423 | 5 days of L3 10 days LOP |

BRIEFLY DESCRIBE THE BASIS OF YOUR APPEAL:

Appellant Appeals based on the Hearing officer's decision not being based on a preponderance of the evidence which violates my due process contrary to P.D. 03-03.105(www)(3)(3). Appellant Contends that Lt Bigger's Finding is silent as to how she came to the conclusion of Appellants guilty besides her making a credibility determination and accepting Satmar's rebuttal as Fact which is contrary to P.D. 03-03.105B Attachment B which states "If written as a result of a grievance it must be shown that prisoner knew allegations was false when he made them. Ordinarily the statement of a staff member refuting the claim will not be sufficient. Furthermore Lt Bigger told me her guilty Finding was because or in retaliation of the filing a grievance and that she didn't care what my evidence proved (Bias & Partial).

(do not write below this line)

(ECF No. 54-5, PageID.398.) Once again, Parker did not assert any claim against Defendant Horton within his Misconduct Appeal as required in order to exhaust a claim of retaliation committed within the misconduct process. *Siggers*, 652 F.3d at 693-94. As such, Parker has not exhausted this retaliation claim against Defendant Horton.

<u>Count Twelve</u>

The documents associated with Parker's claim of retaliation against Defendant Batho also demonstrate Parker's failure to exhaust his administrative remedies. This time, Parker did not appeal Defendant Batho's finding of guilt in the misconduct

hearing. Because Parker did not appeal the finding, he has not exhausted this retaliation claim. *Siggers*, 652 F.3d at 693-94.

### Count Nineteen

The documents associated with Parker's claim of civil conspiracy and retaliation against Defendants Horton, Miller, Brown, and Pawley, asserted in grievance #URF-18-06-1556-23z, demonstrate that Parker had not completed the three-step grievance process for this claim prior to filing this suit. (ECF No. 54-3, PageID.273-74.) While Parker did appeal through all three steps of the grievance process with respect to this claim, the third step was not completed until after Parker filed this suit. *Id*. Because the PLRA requires proper exhaustion *prior* to filing a suit, summary judgment in favor of Defendants is appropriate with respect to this claim. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-91.

Whether the remaining claims were properly exhausted is less clear. Parker contends that he has exhausted his administrative remedies with regards to the claims and Defendants argue that he has not.

### Count One

First, Defendants argue that Parker's claim that Defendant Martin threatened Parker with retaliation if he continued to file grievances, asserted in grievance #URF-18-01-0252-17a, was not properly exhausted because the officials at URF ultimately determined that the claim was frivolous. (ECF No. 54, PageID.255.) Defendants make this argument despite recognizing that Parker adhered to the administrative process and proceeded through all three steps required to properly exhaust a grievance. (*Id.*)

24

It appears that Defendants are attempting to argue that the investigation conducted in response to Parker's grievance, which determined that Parker fabricated his claims against Defendant Martin and resulted in a Class II interference with the administration of rules misconduct for which Parker was found guilty, has a preclusive effect here. (ECF No. 54-5, PageID.397.) But, this is not the case. *See Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018) (determining that, unlike the factual findings of some Class I misconduct hearings, those made within Class II misconduct hearings were not entitled to preclusive effect). As such, the undersigned recommends that Parker properly exhausted his administrative remedies with respect to this claim.

<u>*Count Two*</u>

Defendants next argue that Parker's failure to protect claim against Defendants Miller and Brown was not properly exhausted because grievance <u>#URF-18-01-0256-28A</u> was rejected as duplicative, "a reason explicitly set forth in the applicable grievance procedure . . .." *Burnett v. Howard*, No. 2:09-cv-37, 2010 WL 1286256, at *1 (W.D. Mich. Mar. 30, 2010) (*quoting Grear v. Gelabert,* No. 07-cv-203, 2008 WL 474098, at *2 n. 1 (W.D. Mich. Feb.15, 2008)).  In determining whether a grievance that was rejected as duplicative was properly exhausted, the undersigned looks to this Court's decision in *Bowers v. Burnett*. No. 1:08-CV-469, 2009 WL 7729552, at *9 (July 17, 2009) *report and recommendation adopted*, 2011 WL 1047343 (W.D. Mich. Mar. 18, 2011).

In *Bowers*, U.S. Magistrate Judge Joseph G. Scoville determined that a defendant fails to satisfy their burden of proof regarding exhaustion for a grievance that was rejected as duplicative where (1) the grievance was a not a true duplicate and (2) plaintiff adhered to the administrative procedure for exhaustion by appealing through Step III. The undersigned respectfully recommends that such an analysis is appropriate here.  In application, whether Defendants have met their burden of proof regarding Count Two will depend upon whether grievance #URF-18-01-0256-28A was truly duplicative of grievance #URF-18-01-0252-17a and whether Parker appealed his grievance response through Step III as required by MDOC procedure.

Parker argues that grievance #URF-18-01-0256-28A was in fact improperly rejected because it was not a duplicate of grievance #URF-18-01-0252-17a. Grievance #URF-18-01-0252-17a is shown below.[48]

---

[48] Grievance #URF-18-01-0252-17a reads, "Grievance charges Sgt. Martin with retaliation and threatening and intimidating behavior in violation of P.D. 03.03.130(I)(6) which states, 'staff are prohibited from retaliating against a prisoner who files a complaint or cooperates in an investigation of prohibited staff conduct.' See Employee Handbook Rule #3 (Discriminatory Harassment). On the above violation date at 11:12pm while grievant was leaving the yard following a fire drill grievant was stopped by Sgt. Martin and told to go and sit in Limes unit middle dayroom with the T.V. After a couple of minutes Sgt. Martin and about 5 officers in tow I assume his henchman came into the dayroom. Sgt. Martin wasting no time began to ask me 'what was my fucking problem?' Grievant explained that he didn't know what he was talking about. Sgt. Martin responded 'you know what the fuck I'm talking about your grievances, kites to the warden just all of your complaining stop running your dicksuckers.' Sgt. Martin then had officers surround me then stated 'let me hear you filed another complaint. I'm going to set you up and put you in segregation!'" (ECF No. 54-3, PageID.353.)

(ECF No. 54-3, PageID.353.) Grievance #URF-18-01-0256-28A is shown below.[49]

---

[49]  Grievance #URF-18-01-0256-28A reads, "In accordance with P.D. 03.02.130(R) Grievant charges Inspectors Miller, Brown with failure to protect and subjecting grievant to a unsafe and overtly racist and known violent environment  in violation of P.D. 03.02.130(I)(3) which states, 'Prisoners shall be provided reasonable safety from assaults.' On the above violation date grievant was transferred from Carson City (DRF) to Chippewa (URF). Upon arrival grievant sent kites to inspector: Miller, Brown concerning his safety from officers assault and racial discrimination due to grievant being transferred over 23 months ago from URF due to the exact same allegations. This day grievant was threatened in the chow hall and told by officers that there [sic] going to have gang members stab me. Then on 1-19-18 Grievant was pulled into the middle dayroom by Sgt. Martin at 11:12pm and threatened by Sgt. Martin and surrounded by his henchmen. Check camera (URF-2725). Inspectors Miller, Brown has done nothing to safeguard my person from officers assault or officers hire for Hit. I request a transfer to a facility where I will be safe. P.D. 05.01.140(u)." (ECF No. 54-3, PageID.358.)

(*Id.* at PageID.358.)

It is apparent to the undersigned that while Parker asserts a retaliation claim against Defendant Martin in the initial grievance, Parker asserts a failure to protect claim against Defendants Miller and Brown in the subsequent grievance, using the alleged incident with Defendant Martin as a mere illustration of a time in which he was not properly protected.

In determining whether Parker adhered to the administrative process set forth for exhaustion, the undersigned looks to the Step III Grievance Decision, shown below.

28



RICK SNYDER
GOVERNOR

**STATE OF MICHIGAN**
**DEPARTMENT OF CORRECTIONS**
LANSING

HEIDI E. WASHINGTON
DIRECTOR

**STEP III GRIEVANCE DECISION**

96331
28a

| | | | |
|---|---|---|---|
| **To Prisoner:** | Parker | **#:** | 593090 |
| **Current Facility:** | URF | | |
| **Grievance ID #:** | URF-18-01-0256-28A | | |
| **Step III Received:** | 2/13/2018 | | |

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances".

**THE REJECTION IS UPHELD.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs

**Date Mailed:**

MAR 0 ] 2018

(ECF No. 54-3, PageID.382.) This response establishes that Parker completed the administrative process for this grievance. Because prison officials incorrectly determined that grievance #URF-18-01-0256-28A was a duplicative grievance and the KCF administration was put on notice through Parker's adherence to the grievance process, the undersigned recommends that the Court determine that Defendants have not satisfied their burden of proof regarding Parker's failure to exhaust grievance #URF-18-01-0256-28A.

*Counts Sixteen and Seventeen*

Defendants next argue that Parker failed to exhaust his claim of retaliation against Defendant Pawley. Defendants first point out that Parker pled guilty to the

29

Misconduct Report on which the retaliation claim was based during his April 18, 2019 misconduct hearing. (*Id*. at PageID.257.)  Parker concedes that he pled guilty during the misconduct hearing and thus waived his ability to appeal as required in order to exhaust his administrative remedies. (ECF No. 56, PageID.416.) However, Parker claims that he told the Hearing Officer, Defendant Batho, that the misconduct was retaliatory in nature but that Defendant Batho threatened to further retaliate against him and place him in segregation if he did not plead guilty. (*Id*.)

While a deliberate attempt to thwart a prisoner from taking advantage of an administrative remedy that is required for exhaustion may result in determination that the remedy was unavailable pursuant to *Ross v. Blake*, the undersigned recommends that that such a determination is not appropriate in this case. 136 S. Ct. 1850, 1860 (2016). One of the primary purposes of the PLRA is to provide prison officials with adequate notice so that they have the opportunity to address an issue prior to the commencement of a federal suit. In the absence of an appeal or grievance alleging that Defendant Pawley filed a retaliatory misconduct against him and that Defendant Batho threatened further retaliation if he did not plead guilty, prison officials would not have notice as intended by Congress when it passed the PLRA. *Porter*, 534 U.S. at 525. While Parker filed grievance #URF-18-04-1209-15z asserting that Defendant Pawley filed a retaliatory misconduct against him and this may have been sufficient to put prison officials on notice had it proceeded through the three-step grievance process, Defendants also point out that Parker had not completed the grievance process prior to filing this suit. (ECF No. 54, PageID.252-53.)

The record does not reflect that Parker took necessary steps to put prison officials on notice regarding his retaliation claim against Defendant Batho for the threats that were allegedly made during the misconduct hearing. In addition, Parker did not complete the three-step process which would have put prison officials on notice of his claim against Defendant Pawley prior to filing this suit. For these reasons, the undersigned recommends that the Court dismiss these claims.

**Plaintiff's 12(f) Motion to Strike and Motion for Declaratory Judgment**

In addition to filing a response to Defendants' Motion for Summary Judgment, Parker filed a Motion to Strike (ECF No. 57) and a Motion for Declaratory Judgment (ECF No. 60). In his Motion to Strike, Parker noted that Defendants' brief mistakenly stated that Parker was found guilty of the retaliatory misconduct he received from Defendant Weems on May 16, 2018. (ECF No. 57, PageID.434.) The record shows that Parker was found not guilty (ECF No. 7-1, PageID.86.) In addition, Parker again asserts that grievance #URF-18-01-0256-28A was not duplicative of grievance #URF-18-01-0252-17a. (ECF No. 57, PageID.434-35.)  The undersigned agreed in the exhaustion analysis above. Because the assertions made by Parker in his motion to strike were considered in the exhaustion analysis and there is no evidence to suggest that Defendants' mistakes or arguments were intentionally misleading, the undersigned finds it unnecessary for the Court to strike these portions of Defendants' Motion for Summary Judgment.

Parker's Motion for Declaratory Judgment emphasizes a lack of clarity in Defendants' Motion for Summary Judgment concerning which grievances or

Misconduct Hearing Reports or Appeals relate to which claim against which Defendant(s). (ECF No. 60, PageID.441.) The undersigned agrees that analyzing exhaustion is complicated by a lack of specificity in a motion for summary judgment based on exhaustion. However, the undersigned further notes that Parker's Complaint lacked clarity in setting forth broad claims against all fourteen Defendants. This undoubtedly contributed to the overall complication of addressing administrative exhaustion in this case. Ultimately, the undersigned recommends that granting Parker's Motion for Declaratory Judgment is unnecessary because consideration of whether Defendants satisfied their burden of proof with respect to each claim is part of the above exhaustion analysis. While it would have been helpful for Defendants to clearly identify each claim against each Defendant in their brief, it does not follow that Defendants automatically failed to satisfy their burden of proof regarding all claims against any Defendant who was not named in the argument section of their brief.

## Recommendation

The undersigned respectfully recommends that this Court deny Parker's Motion to Strike and Motion for Declaratory Judgment. In addition, the undersigned recommends that this Court deny Defendants' Motion for Summary Judgment with respect to the following counts:

1.    Count One: January 19, 2018 retaliation claim against Defendant Martin;

2.      Count Two: January 22, 2018 failure to protect claim against Defendants Miller and Brown;

3.      Count Three: January 24, 2018 retaliation claim against Defendant Stabile;

4.      Count Four: January 24, 2018 failure to protect claim against Defendant Horton;

5.      Count Five: January 25, 2018 retaliation claim against Defendant Stabile;

6.      Count Seven: January 30, 2018 retaliation claim against Defendant Simpson;

7.      Count Eight: February 2, 2018 failure to protect claim against Defendants Horton, Miller, and Brown;

8.      Count Ten: February 25, 2018 retaliation claim against Defendant Green;

9.      Count Thirteen: March 6, 2018 retaliation claim against Defendant Bigger;

10.      Count Fourteen: March 9, 2018 retaliation claim against Defendant Belanger;

11.      Count Fifteen: March 13, 2018 retaliation and civil conspiracy claim against Defendants Belanger, Horton, and Pawley;

12.      Count Eighteen: May 16, 2018 retaliation claim against Defendant Weems; and

13.    Count Twenty: May 29, 2018 retaliation claim against Defendant Ford.

Finally, the undersigned recommends that this Court grant Defendants' Motion for Summary Judgment with respect to the following counts:

1.    Count Six: January 30, 2018 retaliation claim against Defendant Eicher;

2.    Count Nine: February 9, 2018 retaliation claim against Defendant Horton;

3.    Count Eleven: February 28, 2018 retaliation claim against Defendant Horton;

4.    Count Twelve: March 2, 2018 retaliation claim against Defendant Batho;

5.    Count Sixteen: April 15, 2018 retaliation claim against Defendant Pawley;

6.    Count Seventeen: April 18, 2018 retaliation claim against Defendant Batho; and

7.    Count Nineteen: May 17, 2018 civil conspiracy and retaliation claims against Defendants Horton, Miller, Brown, and Pawley.

Because there will no longer be a claim against Defendant Eicher, acceptance of this recommendation will result in Defendant Eicher's dismissal from the case.[50]

---

[50]  The undersigned has thoroughly reviewed Parker's complaint and identified each of Parker's claims. To the extent that Parker believes he asserted any other claims in his complaint, those claims do not "contain[ ] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

NOTICE TO PARTIES: Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:  July 25, 2019                              /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE