UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRUCE PARKER #593090,                    Case No. 2:18-cv-00080

             Plaintiff,                Hon. Paul L. Maloney
                                         U.S. District Judge

    v.

CONNIE HORTON, et al.,

             Defendants.
_____/

BRUCE PARKER #593090,                    Case No. 2:18-cv-00186

             Plaintiff,                Hon. Paul L. Maloney
                                         U.S. District Judge

    v.

KENNETH McKEE, et al.,

             Defendants.
_____/

## REPORT AND RECOMMENDATION

### I.    Introduction

This is a consolidated prisoner civil rights case filed by Bruce Parker pursuant to 42 U.S.C. § 1983.  Parker alleges that he was the victim of sexual assault, conspiracy, retaliation, and racism while incarcerated at Chippewa Correctional Facility (URF) in 2018.

The remaining Defendants in the case are Corrections Officer (CO) Duncan Martin, Inspector John Miller, Inspector Mike Brown, CO Derek Stabile, Warden

1

Connie Horton, CO Aaron Simpson, CO Jeffery Green, Hearing Officer Crystal Bigger, former URF Assistant Prison Rape Elimination Act (PREA) Coordinator Lisa Belanger, CO Robert Pawley, and CO Rob Batho.

Prior to consolidation, Plaintiff filed a motion for partial summary judgment in each case.  (Case No. 2:18-cv-80 (hereinafter "Case One"), ECF No. 74, PageID.506 and Case No. 2:18-cv-186 (hereinafter "Case Two"), ECF No.53, PageID.402.)  This report and recommendation addresses both of Plaintiff's motions for summary judgment.[1]  In Case One, Parker asserts that he is entitled to partial summary judgment concerning his First Amendment retaliation claims against CO Weems and CO Ford.  In Case Two, he argues that he is entitled partial summary judgment concerning his First Amendment retaliation claims against Benson, Olmstead, and Belanger, and his Fourteenth Amendment due process claim against Burke.

In response to these motions, Defendants argue that Parker failed to satisfy his burden on summary judgment.  (Case One, ECF No. 88, PageID.547-51; Case Two, ECF No. 60, PageID.482-98.)  In Case One, Defendants added that summary judgment is inappropriate because discovery had not yet closed.  (Case One, ECF No. 88, PageID.551-52.)

---

[1]    It should be noted that Defendants have filed a motion for summary judgment and supporting brief that addresses the merits of Parker's remaining claims in the consolidated case. (*See* Case One, ECF No. 130, PageID.773; Case One, ECF No. 132, PageID.779.)  This report and recommendation does not address Defendants' motion for summary judgment.

The undersigned concludes that there are genuine issues of fact regarding each of the claims for which Plaintiff seeks summary judgment. The undersigned respectfully recommends that the Court deny Parker's motions.

## II.     Additional Relevant Procedural History

### a.   <u>Case One</u>'s Relevant Procedural History Prior to Consolidation

On June 13, 2018, Parker initiated this action by filing Case One in federal court. (ECF No. 1, PageID.1.) Parker alleged twenty different violations of his constitutional rights by several different MDOC employees.

On October 29, 2018, Defendants filed a summary judgment motion and supporting brief based solely on the issue of exhaustion. (ECF No. 53, PageID.239; ECF No. 54, PageID.241.) On July 25, 2019, Court issued a report and recommendation that recommended dismissal of seven of Parker's twenty claims. (ECF No. 70, PageID.466.) The Court adopted the report and recommendation. (ECF No. 71, PageID.501.)

Parker filed a summary judgment motion on September 9, 2019. (ECF No. 74, PageID.506.) In support of the motion, Parker filed a memorandum and an affidavit. (ECF No. 75, PageID.508; ECF No. 76, PageID.511.) Defendants responded on October 21, 2019. (ECF No. 88, PageID.546.) Parker replied on November 4, 2019. (ECF No. 92, PageID.575.)

### b.   <u>Case Two</u>'s Relevant Procedural History Prior to Consolidation

On October 29, 2018, Parker filed Case Two in federal court.  (ECF No. 1, PageID.1.)  Parker alleged another series of constitutional violations by five MDOC employees at URF.

On November 30, 2018, the Court issued a screening opinion and order that dismissed all of Parker's claims against one of the five Defendants (Director Kenneth McKee).  (ECF No. 9, PageID.70; ECF No. 10, PageID.81.)  The Court held that Parked "allege[d] no facts from which to reasonably infer that Defendant McKee's actions were motivated by any of his protected conduct."  (ECF No. 9, PageID.76.)

On December 19, 2018, the case entered the Prisoner Early Mediation (PEM) program.  (ECF No. 16, PageID.102.)  The case failed to settle.  (ECF No. 20, PageID.111.)

On April 25, 2019, Defendants filed a summary judgment motion and supporting brief solely arguing that Parker failed to properly exhaust his claims.  (ECF No. 33, PageID.133; ECF No. 34, PageID.135.)   Then the parties filed a stipulation and proposed order that only allowed five of Parker's claims to proceed.  (ECF No. 36, PageID.371.)  The Court issued the proposed order.  (ECF No. 37, PageID.373.)

On November 12, 2019, Parker moved for summary judgment motion.  (ECF No. 53, PageID.402.)  Defendants responded to Parker's motion.  (ECF No. 60, PageID.473.)  Parker replied.  (ECF No. 61, PageID.565.)

On November 14, 2019, Defendants requested the Court consolidate Case Two with Case One.  (ECF No. 56, PageID.421.)  In response, Parker consented to the

consolidation so long as two conditions were met.  (ECF No. 58, PageID.468.)  The first condition was for discovery to be closed in both cases or have the Court set the close of discovery to occur on January 22, 2019.  The second condition was for Parker to be refunded his filing fees from one of the lawsuits.

### c.  Relevant Procedural History Since Consolidation

On February 27, 2020, the Court ordered the cases be consolidated because (1) there are common questions of fact and law and (2) no confusion or prejudice would occur because of the consolidation.  (Case One, ECF No. 113, PageID.699.)

On April 27, 2020, Defendants filed a summary judgment motion and supporting brief arguing the merits of Parker's claims.  (Case One, ECF No. 130, PageID.773; Case One, ECF No. 132, PageID.779.)  Parker responded in opposition. (Case One, ECF No. 135, PageID.936.)  Defendants replied.  (Case One, ECF No. 138, PageID.985.)  Parker filed a sur-reply.  (Case One, ECF No. 139, PageID.1040.)

On July 29, 2020, Parker requested that Defense Counsel be recused because of alleged "unprofessional and disparaging conduct" by Defense Counsel.  (Case One, ECF No. 142, PageID.1046; Case One, ECF No. 143, PageID.1048.)  Defendants have yet to respond.

### III.    Summary of Plaintiff's Allegations

The two tables below list and summarize Parker's remaining claims from Cases One and Two.

## Parker's Remaining Claims from Case One[2]

| Claim No. | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|-----------|-----------|-------|-----------------------------------|--------------------|
| 1 | Duncan Martin | 1st Amendment Retaliation | 1/19/18 | Parker was threatened with segregation if he filed another grievance. (Case One, ECF No. 1, PageID.6.) |
| 2 | John Miller And Mike Brown | 8th Amendment Failure to Protect | 1/22/18 | Inspectors Miller and Brown failed to protect Parker from violent and overtly racist environments. (Case One, ECF No. 1, PageID.7.) |
| 3 | Derek Stabile | 1st Amendment Retaliation | 1/24/18 | During a shakedown, an officer threatened Parker with Misconduct Reports if he continued to write grievances. Later that day, the same officer wrote Parker a false Misconduct Report. (Case One, ECF No. 1, PageID.7.) |
| 4 | Connie Horton | 8th Amendment Failure to Protect | 1/24/18 | The warden failed to correct deficiencies in the physical structure of the prison that rendered inmates vulnerable to sexual assault. |
| 5 | Derek Stabile | 1st Amendment Retaliation | 1/25/18 | An officer conducted a search of Parker's cell and destroyed some of Parker's photographs and legal documents. (Case One, ECF No. 1, PageID.7-8.) |
| 7 | Aaron Simpson | 1st Amendment Retaliation | 1/30/2018 | During a shakedown, an officer threw Parker's shoes at him and called him a dog. When Parker accused the officer of assault, the officer threatened to put a razor in Parker's cell. (Case One, ECF No. 1, PageID.9.) |
| 8 | Connie Horton, John Miller, and Mike Brown | 8th Amendment Failure to Protect | 2/2/18 | Prison officials were put on notice of Parker's need for protection from existing harm and nevertheless failed to protect him. |
| 10 | Jeffrey Green | 1st Amendment Retaliation | 2/25/2018 | During a shakedown, an officer began to question Parker about his PREA complaint and threatened to have another officer set him up if he did not have the PREA complaint dropped. The officer then smacked Parker's buttocks. (Case One, ECF No. 1, PageID.13.) |

---

[2]    The claim numbers listed in the table are the same numbers that were assigned in the Court's earlier report and recommendation (Case One, ECF No. 70, PageID.474-477).

6

| Claim No. | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 13 | Crystal Bigger | 1st Amendment Retaliation | 3/6/2018 | A Misconduct Hearing Officer found Parker guilty of the February 28, 2018 Misconduct Report because he was "the one filing all of the bullshit sexual complaints and grievances." (Case One, ECF No. 1, PageID.14-15.) |
| 14 | Lisa Belanger | 1st Amendment Retaliation | 3/9/2018 | Parker was written a false misconduct based on his sexual assault complaints and his grievances against Sgt. Belanger. (Case One, ECF No. 1, PageID.14-15.) |
| 15 | Pawley, Belanger, and Horton | 1st Amendment Retaliation; Conspiracy | 3/13/2018 | A Hearing Officer agreed that the March 9, 2018 Misconduct Report written against Parker was false but found Parker guilty anyway in order to appease the Warden and the officer who wrote the Misconduct Report. (Case One, ECF No. 1, PageID.17.) |
| 18 | Billy Weems | 1st Amendment Retaliation | 5/16/2018 | Parker received a false Misconduct Report. (Case One, ECF No. 1, PageID.20.) |
| 20 | Michael Ford | 1st Amendment Retaliation | 5/29/2018 | During a shakedown, Parker was sexually assaulted and then ordered to undress by an officer. (Case One, ECF No. 1, PageID.20-23.) |

## Parker's Remaining Claims from Case Two[3]

| Claim No. | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | Burke | 14th Amendment Due Process | 10/16/18 | During two misconduct hearings, which Burke presided over, he allegedly denied Parker the opportunity to present evidence. (Case Two, ECF No. 1, PageID.6-8.) |
| 2 | Richard Benson | 1st Amendment Retaliation | 10/9/2018 | Parker received a false misconduct ticket based on possession of contraband (30 packets of sugar). (Case Two, ECF No. 1, PageID.6-8.) |

[3]      The claim numbers assigned to Parker's remaining Case Two claims were assigned in the Court's order granting a stipulation that clarified the remaining claims in the action (Case Two, ECF No. 37, PageID.373-374.)

| Claim No. | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 3 | Virginia Olmstead | 1st Amendment Retaliation | 10/9/2018 | Parker received a false misconduct ticket based on creating a disturbance and/or insolence. (Case Two, ECF No. 1, PageID.6-8.) |
| 4 | Lisa Belanger | 1st Amendment Retaliation | 7/27/2018 | Parker received a false misconduct ticket for interfering with the administration of rules.  (Case Two, ECF No. 1, PageID.5.) |
| 5[4] | | 1st Amendment Retaliation | 6/14/2018 | Parker was allegedly placed on suicide watch because he filed grievances against MDOC employees. |

## IV.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[4]      Parker did not argue that he was entitled to summary judgment as to his fifth remaining claim.  (*See* Case Two, ECF No. 54, PageID.405.)  Also, it should be noted, that the parties' stipulation does not clarify who is alleged to have committed that First Amendment retaliation claim.  (*See* Case Two, ECF No. 37, PageID.374.)

"[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (emphasis removed). Thus, the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). "Accordingly, summary judgment in favor of the party with the burden of persuasion 'is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.'" *Green v. Tudor,* 685 F.Supp.2d 678, 685 (W.D. Mich. 2010) (quoting *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999)).

## V.    First Amendment Retaliation Claims

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.[5]

---

[5]    A defendant in a retaliation case may obtain summary judgment if he or she "can show that he would have taken the same action in the absence of the protected

*Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  For the following reasons, it is the opinion of the undersigned that Parker failed to show that he is entitled to summary judgment as to the following First Amendment retaliation claims.

### a.  Parker's Claim Against Weems (Case One, Claim No. Eighteen)

Defendants argue that Weems was unaware of who Parker was during their "limited" interaction and that Parker is "a serial filer of grievances against URF staff."  (ECF No. 88, PageID.548-49.)  Correspondingly, Defendants assert that Parker has not satisfied his burden regarding the claim's third element (the casual connection).  The undersigned agrees.

This far in support of his motion, Parker directs the Court's attention to his own affidavit.  (*See* ECF No.  76, PageID.511.)  Parker attests that Weems "extensively" questioned him, on May 19, 2018 in URF's food service line, about Parker's past complaints.  (*Id.*)  According to Parker, Weems issued him a false misconduct ticket immediately after the questioning.  (*Id.*)

In opposition, Defendants direct the Court's attention to Weems's affidavit (ECF No. 88-1, PageID.555) and URF's food services dining room rules (*Id.*, PageID.561).  When faced with Parker's description of his interaction with Parker, Weems swears that "No such events took place."  (*Id.*, PageID.556.)  Weems attests to having "no knowledge of who Mr. Parker was prior to May 16, 2018," and not

---

activity, he is entitled to prevail on summary judgment."  *Thaddeus-X*, 175 F.3d at 399.

having "any knowledge that Mr. Parker had filed any grievances against any of my coworkers at that time." (*Id.*)  In addition, Weems explains why he issued Parker a Class III misconduct, and how the ticket was issued in accordance with prison policy. (ECF No. 88-1, PageID.556-57.)  According to Weems, the prison policy does not allow for prisoners to move freely around the dining hall; consequently, Parker would not be allowed to reenter the food service line.  (*Id.*)  Weems says that he observed Parker reenter the line and obtain butter, and that he stopped Parker and issued Parker the misconduct ticket.  (*Id.*)

The MDOC policy, shown below (with highlighting added), supports the conclusion that Weems issued Parker a misconduct in good faith based on the factual situation that Weems swears to have seen.

preparation.   All questions shall be referred to food service staff or an officer.

12. After exiting the serving line prisoners must immediately proceed to open seats in the dining room.   Waiting for a specific seat to open is not allowed.   Prisoners are not allowed to pass or receive food from other tables as they proceed to an open seat.

13. Once seated, prisoners may not switch seats.   Prisoners seated at tables are not allowed to reserve other seats for other prisoners by placing utensils, cups or food at empty seats.

14. Prisoners are allowed to share food at the table they are seated at only.   Passing or receiving food to or from another table is not allowed.   Prisoners are not allowed to conceal food items in their clothing while seated in the dining room.   All food must be eaten or disposed of properly.

15. Prisoners are not allowed to throw food or any other item in the dining room and are not allowed to intentionally discard food, utensils or napkins on the dining room floor.

16. When finished eating, prisoners are required to immediately exit the building. Prisoners are not allowed to leave trays, cups or food on the table.

17. No food items, utensils, cups or trays are to be removed from the Food Service building except for one whole fresh fruit of the meal, if available.

18. Prisoners are to remain within the confines of the serving line/dining room area of the building, all other areas are considered off limits.   Restricted areas outlined by red paint on the floor are off limits, prisoner are not allowed to pass through them unless authorized by staff.   Prisoners are not allowed to loiter in any area.

19. Excessive noise, horseplay and running are all prohibited in the building.

(ECF No. 88-1, PageID.562.)

Because the record contains competing evidence as to whether Weems issued Parker a misconduct ticket in retaliation for Parker filing complaint against fellow URF staff, the undersigned concludes that there is a genuine issue as to the third element (the casual connection element) of Parker's claim.

### b.  Parker's Claim Against Ford (Case One, Claim No. Twenty)

The parties disagree almost entirely on the facts surrounding this claim.  (*See* ECF No. 75, PageID.508; ECF No. 88, PageID.549-551.)  As a result, the undersigned respectfully recommend that the Court find that there is a genuine issue of fact.

In Parker's version of the facts, he was an innocent person who was targeted by Ford because of complaints Parker filed against URF staff.  Parker alleges that, on May 29, 2018, Ford pulled him aside after he exited the food service line.  (ECF No. 75, PageID.508.)  Ford then questioned Parker about complaints he filed against other URF staff members.  (*Id.*)  Parker contends that Ford then, with the threat of a taser, required Parker to be strip searched in plain view of all those in the mess hall.  (*Id.*)  Parker states these claims in an affidavit Parker offered to support his motion.  (ECF No. 76, PageID.511.)

Defendants paint an entirely different picture.  According to Defendants, Ford was monitoring the food service line, which required him to scan prisoner's identification cards.   (ECF No. 88, PageID.550.)   While Ford was scanning identification cards, he noticed that Parker cut the food service line.   (*Id.*) Consequently, Ford ordered Parker back to the end of the line.  (*Id.*)  Defendants say that when the line progressed to the point where Ford asked to scan Parker's identification card, Parker expressed "outrage that Ford dare question him."  (*Id.*) Due to Parker's conduct, Ford became suspicious of whether Parker was concealing contraband.  Based on that suspicion, Ford initiated a clothed search of Parker.  (*Id.*) Defendants explained that Parker was frustrated while being searched and began to undress during it.  (ECF No. 88, PageID.550.)  Defendants added that Ford did not know who Parker was prior to scanning Parker's identification card.  (*Id.*)  In an affidavit, Ford swears to all the facts asserted above by the Defendants.  (ECF No. 88-2, PageID.566.)

In addition to the facts asserted by the Defendants, Ford clarifies four facts in his affidavit.  First, Ford initiated a clothed search of Parker because of "Parker's aggressive behavior, and his animosity to my lawful inquiry."  (*Id.*, PageID.565.) Second, prior to this interaction, Ford "did not know Mr. Parker, nor did [he] know any of the grievances that he filed against several MDOC employees at URF."  (*Id.*, PageID.566.)  Third, Ford says he never threatened Parker with a Taser, or any other weapon during the clothed search.  (*Id.*)  And fourth, when Parker began removing his clothes during the search, Ford ordered Parker to stop removing clothes.  (*Id.*)

Based on these conflicting accounts, the undersigned concludes that there is a genuine issue of material fact.

### c.  Parker's Claim Against Benson (Case Two, Claim No. Two)

The undersigned concludes that Parker has failed to show that he is entitled to summary judgment against Benson.

Parker asserts that Benson planted thirty packets of sugar in Parker's cell, and then issued Parker a false Class II misconduct ticket for possessing stolen property, the sugar.  (ECF No. 54, PageID.407.)  In support of his claim, Parker directs the Court's attention to (1) Defendants' responses to requests for admissions (ECF No. 54-1, PageID.411-413), (2) the Step I grievance response to grievance **URF-18-10-2886** (*Id.*, PageID.416), (3) fellow inmate Daniel Perry-El's affidavit (*Id.*, PageID.417), and (4) Parker's own affidavit (*Id.*, PageID.418-419).

In response, Defendants dispute all of Parker's factual assertions and argue that Parker is not entitled to summary judgment.  (*See* ECF No. 60, PageID.473.)

14

Defendants direct the Court's attention to (1) Parker's relevant misconduct ticket and contraband removal form (ECF No. 60-3, PageID.510-512), (2) the relevant misconduct hearing report (ECF No. 60-4, PageID.516), (3) the relevant misconduct appeal (ECF No. 60-5, PageID.520), and (4) Benson's affidavit (ECF No. 60-8, PageID.529).

A careful review of the evidence provided shows that there are genuine issues of fact as to this claim. Parker says that the evidence shows that only Benson and Olmstead had access to the sugar packets. (ECF No.54-1, PageID.412.) He also seeks to show that when a fellow prisoner – Daniel Perry – went to speak with Benson, Perry observed Benson take the sugar packets and was told by Benson that Benson was going to "pack" Parker's property. (*Id.*, PageID.417.) On the other hand, Benson swears that Parker's description of how Parker received his misconduct ticket "is false." (ECF No. 60, PageID.532.) Benson adds that he "did not plant evidence" and that he "did not write a misconduct to retaliate against prisoner Parker for writing grievances against myself or any other officers." (*Id.*) Benson explains that he was packing up Parker's property because Parker was being transferred to segregation when he found the sugar packets.

It is the opinion of the undersigned that the evidence establishes a genuine issue of material fact as to whether Benson's conduct was motived by Parker's complaints against URF staff.

### d.  Parker's Claim Against Olmstead (Case Two, Claim No. Three)

Parker argues that he is entitled to summary judgment because Olmstead issued him a false misconduct ticket for insolence and creating a disturbance. In support of his position, Parker provides the Court with Defendants' responses to requests for admissions (ECF No. 54-1, PageID.411-413) and Parker's own affidavit (*Id.*, PageID.418-419).

Defendants dispute Parker's assertions of fact and argue that there is a genuine issue of material fact. In relevant part, Defendants direct the Court's attention to (1) Parker's relevant misconduct ticket (ECF No. 60-3, PageID.513), (2) the relevant misconduct hearing report (ECF No. 60-4, PageID.517), and (3) the relevant misconduct appeal (ECF No. 60-5, PageID.521), and (4) the Olmstead's affidavit (ECF No. 60-7, PageID.525).

The evidence provided by the parties depicts distinctly different situations. Parker says that he did not make a disturbance by yelling "Hands up don't shoot." (ECF No. 54-1, PageID.419.) Instead, Parker says that the hallway where he interacted with Olmstead was narrow and congested due to the presence of another prisoner, so Parker raised his hands to avoid touching Olmstead.[6] (*See Id.*,

---

[6] In Parker's request for admissions, he sought confirmation that any surveillance videos recorded at URF do not contain an audio recording. (*See* ECF No. 54-1, PageID.412.)

16

PageID.412, 419.)  In contrast, in Olmstead's affidavit, she explains that she did not issue a misconduct ticket in retaliation for grievances filed against her; she noted that "[g]rievances are common in [her] job." (ECF No. 60-7, PageID.527.)  Olmstead adds that she issued Parker the misconduct ticket because she observed him twice raise his hands and yell, "hands up, don't shoot." (*Id*., PageID.526-527.)  In both instances, Parker's conduct caused a disturbance amongst the other prisoners. (*Id*.)  After the second incident, Olmstead issued him the misconduct ticket. (*Id*.)

In the opinion of the undersigned the evidence again establishes a genuine issue of material fact as to whether Olmstead's conduct was motivated by Parker's filing of complaints against URF staff.

### e.  Parker's Claim Against Belanger (Case Two, Claim No. Four)[7]

Parker argues that he is entitled to summary judgment because Belanger issued him a false misconduct ticket on July 27, 2018 for interference with the

---

2.  Admit or Deny.  Defendant Belanger Chippewa Facility camera doesn't have Audio does it?

RESPONSE: Admit.

3.  Admit or Deny.  Defendant Olmstead on October 9, 2018 when we walked through the Hallway in H-unit wasn't there another Prisoner passing through as well?

RESPONSE: Defendant Olmstead can neither admit nor deny that there was another prisoner passing through on October 9, 2018, as Defendant cannot recall that date.

[7]   As noted in Section III of this report and recommendation, Parker maintains three First Amendment retaliation claims against Belanger.  In Parker's motion for summary judgment, he only requested summary judgment as to the First Amendment retaliation claim based on Belanger allegedly issuing Parker a false misconduct ticket for interference with the administration of rules.

17

administration of rules. (*See* ECF No. 54, PageID.405.) In support of his argument, Parker provides the Court with (1) Defendants' responses to his requests for admission (ECF No. 54-1, PageID.411), and (2) Parker's affidavit (*Id.*, PageID.418-419).

Defendants disagree with the facts that Parker presents and argue that he is not entitled to summary judgment on this claim against Belanger. (*See* ECF No. 60, PageID.473.) In support of their argument, Defendants direct the Court to: (1) Belanger's affidavit (ECF No. 60-2, PageID.502-507), (2) the relevant misconduct ticket (ECF No. 60-3, PageID.509), the relevant misconduct hearing report (ECF No. 60-4, PageID.515), and the relevant misconduct appeal (ECF No. 60-5, PageID.519).

A review of the evidence provided by the parties demonstrates that the parties disagree about material facts regarding whether Belanger issued Parker a misconduct ticket in retaliation for Parker allegedly filing a sexual harassment claim against another URF staff member. In Parker's affidavit, he avers that Belanger issued him a false misconduct in retaliation for filing his sexual harassment complaint. (ECF No. 54-1, PageID.418.) In Belanger's affidavit, she states that Parker's allegation regarding her issuing him a false misconduct ticket "is false." (ECF No. 60-2, PageID.505.) She added that she "issued [Parker] a misconduct after [her] investigation led to the conclusion that prisoner Parker's PREA allegations against Officer Ford were unsubstantiated. (*Id.*, PageID.506.)

Because the evidence conflicts as to whether Belanger's conduct was motivated by Parker's filing of a PREA complaint, the undersigned concludes that there is a genuine issue of material fact regarding this claim.

## VI.    Fourteenth Amendment Substantive Due Process Claim (Case Two, Claim No. One)

Parker also argues that he is entitled to summary judgment as to his Fourteenth Amendment substantive due process claim against Burke.[8]  Burke was the hearing officer who presided over Parker's misconduct hearings regarding the tickets that Parker received from Benson and Olmstead.  (ECF No. 60-4, PageID.516-517.)  Burke found Parker guilty of both misconducts.  (*Id.*)  Parker alleges that Burke deprived him of due process during the misconduct hearings when he was not permitted to present unspecified evidence in his defense.[9]  (ECF No. 1, PageID.8.) Defendants argue that Parker's motion should fail as to Burke because Parker has failed to establish a liberty interest.  (ECF No. 60, PageID.495-497.)  The undersigned agrees.

The Fourteenth Amendment prohibits States from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV.  "The

---

[8]     With respect to Burke, the parties also briefed the issue of whether Parker is entitled to summary judgment as to a First Amendment retaliation claim.  (*See* ECF No. 54, PageID.405; ECF No. 60, PageID.492-495.)  The undersigned does not address this retaliation claim because it is no longer a part of the action.  (*See* ECF No. 37, PageID.373.)  The Court granted a joint stipulation where the parties agreed that the retaliation claim against Burke would be dismissed.  (*Id.*)

[9]     As a matter of clarity, the undersigned notes that the parties characterize the claim as being a *substantive* due process claim.  (*See* Case Two, ECF No. 1, PageID.9; Case Two, ECF No. 60, PageID.495-497.)

doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed has come to be known as substantive due process." *Bowers v. City of Flint,* 325 F.3d 758, 763 (6th Cir. 2003) (citation omitted)). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it violates the decencies of civilized conduct." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (internal quotations and citations omitted).

To establish "a violation of substantive due process, the plaintiff must demonstrate that she [or he] 'has a constitutionally protected property or liberty interest' which was infringed upon. *Johnson v. City of Saginaw*, 365 F. Supp. 3d 818, 832 (E.D. Mich. 2019) (quoting *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005)). "[I]dentifying a new fundamental right subject to the protections of substantive due process is often an 'uphill battle,' . . . as the list of fundamental rights 'is short.'" *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) (quoting *Blau v. Fort Thomas Pub. Sch. Dist.,* 401 F.3d 381, 393 (6th Cir. 2005) and *Seal v. Morgan,* 229 F.3d 567, 575 (6th Cir.2000)).

Parker has not identified a fundamental right that was infringed by Burke's actions. (*See* ECF No. 1, PageID.1; *see also* ECF No. 54, PageID.406-408.)  Moreover, the record is bereft of evidence supporting Parker's claim.   In addition, in his

20

affidavit, Burke states that he "do[es] not ignore evidence when [he] hold[s] major

court." (ECF No. 60-9, PageID.537.)  Burke explains that he "found prisoner Parker

guilty on the facts" and that he "acted professionally while holding court on prisoner

Parker." (*Id.*)  Due to the lack of evidence in support of Parker's claim, the

undersigned concludes that there is a genuine issue of fact as to whether a

fundamental right was infringed.

## VII.   Recommendation

    The undersigned respectfully recommends that this Court deny Parker's

motions for summary judgment.


Dated:  August 18, 2020                    /s/ *Maarten Vermaat*
                                           MAARTEN VERMAAT
                                           U. S. MAGISTRATE JUDGE


## <u>NOTICE TO PARTIES</u>

Any objections to this Report and Recommendation must be filed and served within
fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P.
72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR
72.3(b).  Failure to file timely objections may constitute a waiver of any further right
of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*,
474 U.S. 140 (1985).