UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRUCE PARKER #593090,                                Case No. 2:18-cv-00080

                 Plaintiff,                            Hon. Hala Y. Jarbou
                                                     U.S. District Judge

    v.

CONNIE HORTON, et al.,

                 Defendants.
_____/

BRUCE PARKER #593090,                                Case No. 2:18-cv-00186

                 Plaintiff,                            Hon. Hala Y. Jarbou
                                                     U.S. District Judge

    v.

KENNETH McKEE, et al.,

                 Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I.    **Introduction**

State prisoner Bruce Parker filed the first case listed in the caption – *Parker
v. Horton, et al.*, W.D. Mich. Case No. 2:18-cv-80 – on June 13, 2018. *Parker v. Horton*,
W.D. Mich. Case No. 2:18-cv-80 will be identified as **"Case One"** in this Report and
Recommendation (R&R). The second case listed in the caption – *Parker v. McKee, et
al.*, W.D. Mich. Case No. 2:18-cv-186 – was filed by Parker on October 29, 2018.

*Parker v. McKee, et al.*, W.D. Mich. Case No. 2:18-cv-186 will be identified as **"Case Two."**

On February 27, 2020, U.S. District Judge Maloney consolidated Case One and Case Two and ordered that all future pleadings be docketed in Case One.  (Case One, ECF No. 113.)

Parker alleges that he suffered sexual assaults, retaliation for engaging in protected conduct and racism, in violation of the U.S. Constitution, and conspiracy to commit these acts, while incarcerated at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan in 2018.  In Case One, Parker initially asserted 20 claims against a total of 14 Defendants.  Seven of these claims and two Defendants have been dismissed.  In Case Two, Parker stated five claims against four known Defendants.  The remaining Defendants are Warden Horton, Inspector Miller, Inspector Brown, Sergeant (Sgt.) Martin, Corrections Officer (CO) Stabile, CO Simpson, former-URF Assistant Prison Rape Elimination Act (PREA) Coordinator / Sgt. Belanger, CO Green, Hearing Officer (HO) / Lieutenant (Lt.) Bigger, Lt. Pawley, CO Weems, CO Ford, CO Benson, CO Olmstead, and Capt. Burke.[1]

Below, in Section III, the 18 remaining claims are summarized in two tables. The claim numbers were assigned in earlier R&Rs (Case One, ECF No. 70; Case Two, ECF No. 100) and have been maintained.

---

[1]    Lt. Belanger is identified as a defendant in both cases.  Thus, 15 defendants remain.

This R&R addresses a motion for summary judgment filed by Defendants. (Case One, ECF Nos. 130, 132.) After reviewing Defendants' summary judgment motion and supporting brief, Parker's response (Case One, ECF No. 135), and Defendants' reply (Case One, ECF No. 138), the undersigned concludes that Parker failed to establish a genuine issue of fact as to several of his claims. In Case One, Parker failed to establish genuine issues of fact as to claims 2, 4, 8, and 20. In Case Two, Parker failed to establish genuine issues of fact as to claims 1 and 4. In the opinion of the undersigned, genuine issues of fact as to Parker's remaining claim, all of which allege retaliation, in violation of the First Amendment.

## II.    Additional Relevant Procedural History

### a. <u>Case One</u>'s Relevant Procedural History Prior to Consolidation

On June 13, 2018, Parker initiated this action by filing Case One in federal court. (Case One, ECF No. 1, PageID.1.) Parker alleged twenty different violations of his constitutional rights by 14 different MDOC employees.

On October 29, 2018, Defendants filed a summary judgment motion and supporting brief based solely on the issue of exhaustion. (Case One, ECF No. 53, PageID.239; ECF No. 54, PageID.241.) On July 25, 2019, this Court issued R&R that recommended dismissal of seven of Parker's twenty claims. (Case One, ECF No. 70, PageID.466.) The Court adopted this R&R. (Case One, ECF No. 71, PageID.501.)

Parker filed a motion for partial summary judgment on September 9, 2019. (Case One, ECF No. 74, PageID.506.) In support of the motion, Parker filed a memorandum and an affidavit. (Case One, ECF No. 75, PageID.508; ECF No. 76,

PageID.511.)  Defendants responded on October 21, 2019.  (Case One, ECF No. 88, PageID.546.)   Parker replied on November 4, 2019.   (Case One, ECF No. 92, PageID.575.)  The Court denied Parker's motion after consolidation of Case One and Case Two.

### b. <u>Case Two</u>'s Relevant Procedural History Prior to Consolidation

On October 29, 2018, Parker filed Case Two in federal court.  (Case Two, ECF No. 1, PageID.1.)  Parker alleged another series of constitutional violations by five MDOC employees at URF.

On November 30, 2018, the Court issued a screening opinion and order that dismissed all of Parker's claims against one of the five Defendants: Director Kenneth McKee.  (Case Two, ECF No. 9, PageID.70; ECF No. 10, PageID.81.)  The Court held that Parked "allege[d] no facts from which to reasonably infer that Defendant McKee's actions were motivated by any of his protected conduct."  (Case Two, ECF No. 9, PageID.76.)

On December 19, 2018, the case entered the Prisoner Early Mediation (PEM) program.  (Case Two, ECF No. 16, PageID.102.)  The case failed to settle.  (Case Two, ECF No. 20, PageID.111.)

On April 25, 2019, Defendants filed a summary judgment motion and supporting brief solely arguing that Parker failed to properly exhaust his claims.  (Case Two, ECF No. 33, PageID.133; ECF No. 34, PageID.135.)  Then the parties filed a stipulation and proposed order that allowed five of Parker's claims to proceed.  (Case

Two, ECF No. 36, PageID.371.)  The Court issued the proposed order.  (Case Two, ECF No. 37, PageID.373.)

On November 12, 2019, Parker moved for summary judgment.  (Case Two, ECF No. 53, PageID.402.)  Defendants responded to Parker's motion.  (Case Two, ECF No. 60, PageID.473.)  Parker replied.  (Case Two, ECF No. 61, PageID.565.) The Court denied Parker's motion after consolidation of Case One and Case Two.

### c.  Consolidation

On November 14, 2019, Defendants requested the Court consolidate Case Two with Case One.  (Case Two, ECF No. 56, PageID.421.)  In response, Parker consented to the consolidation so long as two conditions were met.  (Case Two, ECF No. 58, PageID.468.)

On February 27, 2020, the Court ordered the cases be consolidated because (1) there are common questions of fact and law and (2) no confusion or prejudice would occur because of the consolidation.  (Case One, ECF No. 113, PageID.699.)  After entry of this order, all pleadings were docketed in Case One, W.D. Mich. Case No. 2:18-cv-80.  (*Id.*, PageID.700.)

### d.  Relevant Procedural History Since Consolidation

On July 29, 2020, Parker requested that Defense Counsel be recused because of alleged "unprofessional and disparaging conduct" by Defense Counsel.  (Case One, ECF No. 142, PageID.1046; ECF No. 143, PageID.1048.)  The Court denied this motion on January 1, 2021.  (Case One, ECF No. 150.)

On August 7, 2020, the Court issued a R&R that recommended the Court deny both summary judgment motions filed by Parker prior to consolidation. (Case One, ECF No. 145.) The Court adopted the recommendation. (Case One, ECF No. 146.)

Since consolidation, Defendants filed a summary judgment motion and supporting brief that addresses the merits of each of Parker's 18 remaining claims. (Case One, ECF Nos. 130, 132.) In addition, Defendants asserted that all of Parker's claims are barred by the doctrine of qualified immunity. This R&R addresses Defendants' summary judgment motion.

Parker responded by attesting to many of the factual allegations underpinning his claims against the Defendants. (Case One, ECF No. 135.) Because Parker's response complied with the requirements of 28 U.S.C. § 1746, the undersigned construes Parker's response as an affidavit. Attached to Parker's response were several exhibits: a January 18, 2018 letter from Parker to Warden Horton, Inspector Miller, and Inspector Brown from Parker (Case One, ECF No. 135-2); a January 25, 2018 letter to Warden Horton from Parker (Case One, ECF No. 135-3); a February 11, 2018 letter to Warden Horton from Parker (Case One, ECF No. 135-4); a blog article discussing the reliability of sexual assault victims as to Ms. Christine Blasey Ford's testimony during Justice Brett Kavanaugh's confirmation hearings (Case One, ECF No. 135-5), and an affidavit from fellow prisoner Daniel Perry (Case One, ECF No. 135-6).

In reply, Defendants stated that Parker failed to rebut their evidence and failed to establish a genuine issue of fact. (Case One, ECF No. 138.) According to the

Defendants, Parker failed because he neglected to submit any admissible evidence – other than his own statements – into the record.  (*Id.*)  Defendants add that the Court should disregard Prisoner Perry's affidavit because it was allegedly written by Parker and is *per se* defective.  (*Id.*, PageID.986-991.)

Parker filed an unauthorized sur-reply.  (Case One, ECF No. 139).  The sur-reply has not been reviewed.  "It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a surreply."  *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2009 WL 3711602, at *22 (W.D. Mich. Nov. 3, 2009) (footnote omitted).  The Court may grant leave to file a sur-reply to afford a party an opportunity to address new issues raised for the first time in the reply.  *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010).  Parker is an experienced litigator in this Court.  A query on the Court's electronic court filing system, or ECF, indicates that he has been the plaintiff in approximately seven lawsuits in this Court.  In this case, Parker did not seek leave to file his sur-reply before filing it.  Accordingly, the sur-reply was not reviewed.

### III.    Summary of Plaintiff's Allegations

The two tables below list and summarize Parker's remaining claims from Cases One and Two.

## Parker's Remaining Claims from Case One[2]

| Claim No. | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | CO Martin | 1st Amendment Retaliation | 1/19/18 | Parker was threatened with segregation if he filed another grievance. (Case One, ECF No. 1, PageID.6.) |
| 2 | Inspector Miller and Inspector Brown | 8th Amendment Failure to Protect | 1/22/18 | Inspectors Miller and Brown failed to protect Parker from violent and overtly racist environments. (Case One, ECF No. 1, PageID.7.) |
| 3 | CO Stabile | 1st Amendment Retaliation | 1/24/18 | During a shake-down, an officer threatened Parker with Misconduct Reports if he continued to write grievances. Later that day, the same officer wrote Parker a false Misconduct Report. (Case One, ECF No. 1, PageID.7.) |
| 4 | Warden Horton | 8th Amendment Failure to Protect | 1/24/18 | The warden failed to correct deficiencies in the physical structure of the prison that rendered inmates vulnerable to sexual assault. |
| 5 | CO Stabile | 1st Amendment Retaliation | 1/25/18 | An officer conducted a search of Parker's cell and destroyed some of Parker's photographs and legal documents. (Case One, ECF No. 1, PageID.7-8.) |
| 7 | CO Simpson | 1st Amendment Retaliation | 1/30/18 | During a shake-down, an officer threw Parker's shoes at him and called him a dog. When Parker accused the officer of assault, the officer threatened to put a razor in Parker's cell. (Case One, ECF No. 1, PageID.9.) |
| 8 | Warden Horton, Inspector Miller, and Inspector Brown | 8th Amendment Failure to Protect | 2/2/18 | Prison officials were put on notice of Parker's need for protection from existing harm and nevertheless failed to protect him. |

---

[2]    The claim numbers listed in the table are the same numbers that were assigned in the Court's earlier report and recommendation (Case One, ECF No. 70, PageID.474-477). The undersigned recommends that the claims highlighted in green go forward. The undersigned recommends that summary judgment be granted with respect to the claims highlighted in red.

| Claim No. | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 10 | CO Green | 1st Amendment Retaliation | 2/25/18 | During a shake-down, an officer began to question Parker about his PREA complaint and threatened to have another officer set him up if he did not have the PREA complaint dropped. The officer then smacked Parker's buttocks.  (Case One, ECF No. 1, PageID.13.) |
| 13 | Lt. Bigger | 1st Amendment Retaliation | 3/6/18 | Hearing Officer Bigger found Parker guilty of the February 28, 2018 Misconduct ticket because he was "the one filing all of the bullshit sexual complaints and grievances."  (Case One, ECF No. 1, PageID.14-15.) |
| 14 | Sgt. Belanger | 1st Amendment Retaliation | 3/9/18 | Parker was written a false misconduct as a result of his sexual assault complaints and his grievances against Sgt. Belanger. (Case One, ECF No. 1, PageID.14-15.) |
| 15 | Lt. Pawley, Sgt. Belanger, and Warden Horton | 1st Amendment Retaliation; Conspiracy | 3/13/18 | Hearing Officer Pawley agreed that the March 9, 2018 Misconduct Report written against Parker was false but found Parker guilty anyway because Warden Horton and Belanger requested it.  (Case One, ECF No. 1, PageID.17.) |
| 18 | CO Weems | 1st Amendment Retaliation | 5/16/18 | Parker received a false Misconduct Report.  (Case One, ECF No. 1, PageID.20.) |
| 20 | CO Ford | 1st Amendment Retaliation | 5/29/18 | During a shake-down, Parker was sexually assaulted and then ordered to undress by an officer. (Case One, ECF No. 1, PageID.20-23.) |

**Parker's Remaining Claims from Case Two[3]**

---

[3]     The claim numbers assigned to Parker's remaining Case Two claims were assigned in the Court's order granting a stipulation that clarified the remaining claims in the action (Case Two, ECF No. 37, PageID.373-374).

| Claim No. | Defendant | Claim | Date or Date Range of Incident(s) | Factual Allegation |
|---|---|---|---|---|
| 1 | CO Burke | 14th Amendment Due Process | 10/16/18 | During two misconduct hearings, which Burke presided over, he allegedly denied Parker the opportunity to present evidence. (Case Two, ECF No. 1, PageID.6-8.) |
| 2 | CO Benson | 1st Amendment Retaliation | 10/9/18 | Parker received a false misconduct ticket based on possession of contraband (30 packets of sugar). (Case Two, ECF No. 1, PageID.6-8.) |
| 3 | CO Olmstead | 1st Amendment Retaliation | 10/9/18 | Parker received a false misconduct ticket based on creating a disturbance and/or insolence. (Case Two, ECF No. 1, PageID.6-8.) |
| 4 | Sgt. Belanger | 1st Amendment Retaliation | 7/27/18 | Parker received a false misconduct ticket for interfering with the administration of rules. (Case Two, ECF No. 1, PageID.5.) |
| 5[4] | Unknown Defendant | 1st Amendment Retaliation | 6/14/18 | Parker was allegedly placed on suicide watch because he filed grievances against MDOC employees. |

## IV.    Parker's First Amendment Retaliation Claims

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to establish a First Amendment retaliation claim, a plaintiff must prove: (1) that he was engaged in protected conduct; (2) that an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action was motivated, at least in part, by the protected conduct. *Id*. The Sixth Circuit has repeatedly held that "protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against

---

[4]    Parker did not argue that he was entitled to summary judgment as to his fifth claim. (*See* Case Two, ECF No. 54, PageID.405.) Also, it should be noted that the parties' stipulation does not clarify who is alleged to have committed this act of retaliation. (*See* Case Two, ECF No. 37, PageID.374.)

prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)

(quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). "If the grievances are

frivolous, however, this right is not protected." *Id.* "'Abusive or manipulative use of

a grievance system [is] not…protected conduct,' and prison officials may take action

in response to the prisoner's improper use of the grievance process as long as the

response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 Fed.

App'x. 411, 416 (6th Cir. 2014) (quoting *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir.

2012)).

After a prisoner establishes the first two elements, the prisoner must prove

that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th

Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

287 (1977)).

The Sixth Circuit has established a burden-shifting rule regarding the

causation element:

> Once the plaintiff has met his burden of establishing that his protected
> conduct was a motivating factor behind any harm, the burden of
> production shifts to the defendant. If the defendant can show that he
> would have taken the same action in the absence of the protected activity,
> he is entitled to prevail on summary judgment.

*Thaddeus-X,* 175 F.3d at 399.

### a.  CO Martin (Case One, Claim One)

Defendants argue that Parker's First Amendment retaliation claim against CO

Martin should be dismissed because Parker cannot establish that CO Martin knew

about a grievance filed by Parker, and because Parker cannot show that CO Martin
took an adverse action against Parker.  The undersigned disagrees.

A review of the evidence in the record leads to the conclusion that Parker
established genuine issues of fact as to the elements of this claim.  First, the record
shows that Parker submitted grievance **URF-18-01-0208-24C** on January 18, 2018.[5]
(Case One, ECF No. 54-3, PageID.277.)  Second, Parker's verified complaint[6] alleges
that, on January 19, 2018, CO Martin threatened Parker that if he (CO Martin)
"hear[d] you filed another grievance I'm going to set you up and put you in
segregation."  (Case One, ECF No. 1, PageID.6.)  Third, the statement attributed to
CO Martin by Parker connects CO Martin's threat (the adverse action) to Parker's
filing of a grievance (the protected conduct).  Accordingly, the undersigned concludes
that there are genuine issues of material fact.

### b.  CO Stabile (Case One, Claim Three)

Defendants argue that Parker's first retaliation claim against Stabile should
be dismissed as fabricated because Stabile allegedly threatened Parker and issued
Parker a misconduct (the adverse action) *before* Parker filed the grievance that

---

[5]     The filing of grievances is protected conduct under the First Amendment.  *Hill
v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) ("Such protected conduct includes a
prisoner's 'undisputed First Amendment right to file grievances against prison
officials on his own behalf'") (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.
2000)).

[6]     The undersigned notes that Parker's complaint (Case One, ECF No. 1) is
"verified" because it comports with the requirements of 28 U.S.C. § 1746.

constituted the protected conduct.  (Case One, ECF No. 132, PageID.821-822.)  The undersigned disagrees.

In Parker's verified complaint and affidavit-response, Parker attests that, on January 24, 2018, CO Stabile shook down Parker and threatened Parker with misconduct tickets if Parker did not sign off on his grievance against CO Martin. (Case One, ECF No. 1, PageID.7; Case One, ECF No. 135, PageID.938-939.)  By the time CO Stabile threatened Parker (the adverse action), Parker had already filed two grievances against CO Martin (the protected conduct): grievances **URF-18-01-0252-17a** (*see* Case One, ECF No. 54-3, PageID.276 (MDOC Prisoner Step III Grievance Report, indicating grievance filed at Step I on January 22, 2018)) and **URF-18-01-0256-28A** (*id.*, PageID.277 (same, indicating grievance filed at Step I on January 23, 2018)).  Further, the statements attributed to CO Stabile by Parker connect CO Stabile's adverse conduct to Parker's protected conduct.  (Case One, ECF No. 1, PageID.7; Case One, ECF No. 135, PageID.938-939.)  As a result, the undersigned concludes that there are genuine issues of fact as to the elements of Parker's claim against CO Stabile.

### c.  CO Stabile (Case One, Claim Five)

Defendants challenge Parker's second retaliation claim against CO Stabile.  In this claim, Parker alleges that CO Stabile inappropriately searched his cell and destroyed his property while he was at dinner.  First, Defendants argue that Parker did not engage in protected conduct (the filing of grievances) because an unidentified grievance was rejected on procedural grounds.  (Case One, ECF No. 132, PageID.823-

13

824.)  Second, Defendants argue that Parker cannot establish his claim without a corroborating witness and/or evidence showing that CO Stabile destroyed Parker's legal paperwork.  (*Id*.)  And third, they argue that CO Stabile could not have retaliated against Parker because the alleged retaliatory act predates Parker's grievances against CO Martin.  The undersigned agrees that Parker failed to provide evidence showing that CO Stabile searched Parker's cell and destroyed Parker's property.

Parker's statements constitute the only evidence in the record showing that CO Stabile committed the alleged search and property destruction.  (Case One, ECF No. 1, PageID.7-8; Case One, ECF No. 135, PageID.939-940.)  In those statements, however, Parker attests that he was not present at the time of the search.  (*Id*.)  Instead, he was at dinner with his cellmate.  (*Id*.)  Thus, Parker failed to explain how he knew that CO Stabile searched his cell and destroyed his property.  And accordingly, the undersigned concludes that Parker failed to establish a genuine issue of fact as to whether CO Stabile searched Parker's cell and destroyed Parker's property.

### d.  CO Simpson (Case One, Claim Seven)

Defendants state that Parker's retaliation claim against CO Simpson should not survive summary judgment (1) because Parker's relevant grievance was rejected on procedural grounds, (2) because throwing and hitting Parker with a shoe is de minimis to qualify as an adverse action, and (3) because Parker has not established

14

that CO Simpson was aware of the grievances that Parker filed at the time of the alleged adverse action.  (*Id.*, PageID.824-825.)  The undersigned disagrees.

Parker provided evidence that addresses each element of his retaliation claim. Parker attested that, on January 30, 2018, CO Simpson impermissibly shook down Parker and forced Parker to remove his shoes.  (Case One, ECF No. 1, PageID.9; Case One, ECF No. 135, PageID.940-941.)  During this interaction, CO Simpson allegedly called Parker a "dog" and asked Parker whether he thought he would "get away with filing a grievance on my co/worker Stabile?"  (*Id.*)  Also, during this interaction, CO Simpson allegedly threw one of Parker's shoes at him.  (*Id.*)  The evidence shows that Parker engaged in protected conduct (filing a grievance), that CO Simpson committed an adverse action (impermissibly shook down Parker and threw a shoe at him), and that the statements attributed to CO Simpson by Parker causally connect the adverse action to Parker's protected conduct.  As a result, the undersigned concludes that there are genuine issues of material fact as to this claim.

Further, it is the opinion of the undersigned that the act of throwing a shoe is not de minimis.  "[U]nless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury.'"  *Bell*, 308 F.3d at 603.  Further, a "retaliatory action is sufficiently severe [when the action is able] to deter a person of ordinary firmness from exercising his or her rights is a question of fact."  *Id.*  In the opinion of the undersigned, CO Simpson's throwing of a shoe cannot be categorized as de minimis at this point.

### e.  CO Green (Case One, Claim 10)

15

Defendants argue that Parker's retaliation claim against CO Green should not survive summary judgment because Parker's underlying PREA grievance was fictitious, and because Parker failed to establish that CO Green committed an adverse act.  (Case One, ECF No. 132, PageID.808-818.)  The undersigned disagrees.

Defendants direct the Court's attention to Parker's URF Investigations Packet.  (Case One, ECF No. 132-4, PageID.875-877.)  The investigation report shows that MDOC officials reviewed a surveillance video that disproved Parker's allegation that CO Green threatened him regarding filing grievances, commented about Parker's butt, and slapped Parker's butt.  (*Id*.)  The video on which the investigation hinged, however, is not part of the record.  As a result, the investigation falls short of extinguishing all genuine issues of fact.  Parker provided the Court with sworn statements that CO Green inappropriately shook him down, threatened Parker about filing grievances, and slapped Parker's backside.  (Case One, ECF No. 1, PageID.12-13; Case One, ECF No. 135, PageID.943.)  Accordingly, the undersigned concludes that there are genuine issues of fact as to each element of Parker's retaliation claim against CO Green.

### f.  Hearing Officer (HO) Bigger (Case One, Claim 13)

Defendants challenge Parker's retaliation claim against HO Bigger by arguing that Parker did not engage in protected conduct, and by arguing that Parker cannot establish that HO Bigger took an adverse action against him.  (Case One, ECF No. 132, PageID.808-818.)  The undersigned disagrees.

In his verified complaint and affidavit-response, Parker stated that HO Bigger falsely found Parker guilty of the misconduct ticket for interfering with the administration of prison rules.  (Case One, ECF No. 1, PageID.14-15; Case One, ECF No. 135, PageID.944-945.)  When Parker tried to offer evidence as part of his defense during his misconduct hearing, HO Bigger asked Parker if he was the one "filing all of the bullshit sexual complaints?"  (*Id.*)   In response, Parker asked HO Bigger to recuse herself from his case, but she did not.  Instead, HO Bigger found Parker guilty. (*Id.*)

Based upon the testimony provided by Parker, the undersigned concludes that there are genuine issues of fact as to his retaliation claim against HO Bigger:  Parker engaged in protected conduct (filing PREA complaints), HO Bigger committed a potentially adverse action (finding Parker guilty of a misconduct), and there is a causal connection between the protected conduct and adverse action (the question and statements attributed to HO Biggers by Parker).

### g.  Sgt. Belanger (Case One, Claim 14)

Defendants again assert that there is no genuine issue of fact regarding the protected conduct element because Parker's underlying PREA grievance is fictitious. In addition, Defendants argue that Parker failed to establish that Sgt. Belanger took an adverse action against him.  (Case One, ECF No. 132, PageID.808-818.)   The undersigned disagrees with Defendants' arguments but concludes that Parker failed

17

to establish a genuine issue of fact regarding the causal connection between his

protected conduct and Sgt. Belanger's adverse action.[7]

Defendants direct the Court's attention to Parker's URF Investigations Packet

(Case One, ECF No. 132-4), Detective-Sgt. Johnson's Affidavit (Case One, ECF No.

132-5), and Belanger's affidavit (Case One, ECF No. 132-6).  In sum, Defendants'

evidence shows that Defendants investigated Parker's January 2018 sexual assault

allegation and found no corroborating evidence that suggested the assault happened.

Due to the lack of corroborating evidence and Parker's uncooperative behavior during

the investigation (Parker failed to provide Defendants one concrete detail),

Defendants concluded that Parker's allegation was fictitious.  As a result,  Belanger

issued Parker a misconduct ticket for filing a false sexual assault allegation.  In Sgt.

Belanger's affidavit, she added that she does "not retaliate against prisoners if they

---

[7]    It should be noted that this Court is not bound by the MDOC's guilty adjudications of Parker for filing false PREA claims.  The Sixth Circuit reaffirmed its four-factored test in *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) that determines whether a prison hearing officer's factual finding are preclusive regarding the facts causing the misconduct ticket.  *Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018).  The preclusive effect – and test by extension – only applies to "major misconduct hearings", which are Class I misconduct proceedings.  *Peterson*, 714 F.3d at 915.  Here, the misconduct tickets issued by Sgt. Belanger are Class II misconducts, which are not entitled to any preclusive effect.  (ECF No. 132-8, PageID.900-901; ECF No. 132-11, PageID.909.)

However, if Defendant can show that Parker filed a false PREA grievance, then the filing of the false grievance would not be protected conduct.  The right to file grievances is protected only insofar as the grievances are not "frivolous."  *Herron*, 203 F.3d at 415.  "Abusive or manipulative use of a grievance system would not be protected conduct," *King*, 680 F.3d at 699, and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

write grievances against [her] or other staff" and she does "not write false misconducts or investigation reports." (Case One, ECF No. 132-6, PageID.894.)

In contrast, Parker attests that he was sexually assaulted during a shake-down by an unknown officer on an unknown date in January 2018. (Case One, ECF No. 1, PageID.9; Case One, ECF No. 135, PageID.941-942.) Parker further swore that Sgt. Belanger issued him a false misconduct ticket (the adverse action) because he filed a PREA complaint (the protected conduct) complaining about a January 2018 sexual assault. Parker failed to explain how he knew that Sgt. Belanger issued him a misconduct ticket in retaliation for grievances filed against her. (Case One, ECF No. 1, PageID.16; Case One, ECF No. 135, PageID.945-946.) Thus, Parker has failed allege facts establishing a causal connection between the protected conduct and the adverse action.

### h. CO Weems (Case One, Claim 18)

Defendants argue that Parker's retaliation claim against CO Weems should not survive summary judgment because Parker cannot show CO Weems knew about the grievances that Parker had filed, and because the misconduct ticket issued by CO Weems to Parker was dismissed. (Case One, ECF No. 132, PageID.825-827.) The undersigned disagrees.

In Parker's verified complaint and affidavit-response, he attested that, on May 16, 2016, CO Weems interacted with him in URF's chow hall. (Case One, ECF No. 1, PageID.20; Case One, ECF No. 135, PageID.953.) During the interaction, CO Weems called Parker the "grievance writing guy" and asked if Parker was "done filing

grievances or [would] I need to come to your cell and plant some contraband?" (*Id.*) After the interaction, CO Weems issued Parker a misconduct ticket. (*Id.*) Based upon the testimony provided by Parker, the undersigned concludes that Parker has established genuine issues of fact as to each of the three elements of his claim.

### i. CO Ford (Case One, Claim 20)

Defendants contend that Parker's retaliation claim against CO Ford does not survive summary judgment because video evidence (Case One, ECF No. 132-2)[8] disproves Parker's allegations. The undersigned agrees.

Parker alleges that, on May 29, 2018, CO Ford sexually assaulted him during an inappropriate shake-down. (Case One, ECF No. 1, PageID.20-23.) The video evidence provided by Defendants clearly disproves Parker's allegations. (Case One, ECF No. 132-9, 132-10.) The first video segment depicts the interaction between CO Ford and Parker in the URF's kitchen lines. This interaction occurred prior to CO Ford searching Parker outside. (Case One, ECF No. 132-9.) For about one minute – from time-stamp 12:26:14:490 to 12:27:16:380 – Parker can be seen in the kitchen lines wearing orange shorts and a white t-shirt. The video shows Parker cutting in line in front of other prisoners to have his ID card scanned. At that moment, CO Ford declined to scan his card and forced Parker to wait his turn to have his card scanned. Eventually, Parker's card was scanned. Nothing inappropriate happened during this interaction.

---

[8]    The video was filed under seal. (*See* ECF No. 134 (noting that Parker was previously provided an opportunity to view the video evidence).)

The second video segment, which runs about 2-1/2 minutes, shows CO Ford searching two prisoners in the prison yard, one after the other.   Parker was the second prisoner searched.  CO Ford initiated the interaction by gesturing to Parker to come over and be searched.  Parker complied.  CO Ford then directed Parker to face away from him and for Parker to raise his arms.  When Parker was turned away, CO Ford patted down Parker.  Ford's pat down search was conducted in what appears to be an appropriate manner.  After Ford completed his search, Parker began to take off his shirt and raised his arms.  Parker then put his shirt back on and walked off into the yard while CO Ford walked back into the URF facility.  At no point did CO Ford touch Parker inappropriately or underneath Parker's clothes.

Accordingly, the undersigned concludes that Defendants' video evidence extinguishes any genuine issues of fact as to Parker's claim against CO Ford.

### j.  COs Benson and Olmstead (Case Two, Claims Two and Three)

Defendants argue that Parker's remaining First Amendment retaliation claim against COs Benson and Olmstead should be dismissed because the claim is based on Parker being held on a suicide watch and there is no evidence to show that COs Benson and Olmstead chose to hold Parker under a suicide watch.[9]  (Case One, ECF No. 132, PageID.829-830.)  The undersigned disagrees.

---

[9]    Defendants contend that adverse action by Benson and Olmstead was placing Parker in suicide watch.  (Case One, ECF No. 132, PageID.829-830.)  As discussed in Section III, Parker alleged that COs Benson and Olmstead took adverse actions toward Parker by issuing him false misconduct tickets.  As a result of those tickets, however, Parker stated that he was placed into suicide watch after being found guilty.

According to Parker's verified complaint and affidavit-response, COs Benson and Olmstead confronted Parker on October 8, 2018 about Parker's grievances against MDOC staff.  (Case Two, ECF No. 1, PageID.6; Case One, ECF No. 135, PageID.955-956.)  Parker says that COs Benson and Olmstead told him that they had the "green light" to issue him any misconduct ticket that they liked.  (*Id.*)  Parker stated that, the next day, CO Benson followed through by issuing him a false misconduct ticket for having contraband (30 packets of sugar).  (Case Two, ECF No. 1, PageID.7; Case One, ECF No. 135, PageID.957.)  Later that same day, CO Olmstead also issued Parker a false misconduct ticket, but for insolence.  (Case Two, ECF No. 1, PageID.7; Case One, ECF No. 135, PageID.956-957.)

Based on Parker's verified complaint and affidavit-response, Parker engaged in protected conduct (filing grievances), COs Benson and Olmstead committed adverse actions toward Parker (issuing false misconduct tickets), and COs Benson's and Olmstead's statements – as described by Parker – causally connect the issuance of false misconduct tickets to Parker's grievances.  Accordingly, the undersigned concludes that there are genuine issues of fact.

### k.  Sgt. Belanger (Case Two, Claim Four)

In this retaliation claim, Parker alleges that Sgt. Belanger issued him a false misconduct ticket in retaliation for complaining about CO Ford's alleged sexual assault against him.  (Case Two, ECF No. 1, PageID.4-5.)  Defendants assert that this retaliation claim cannot survive summary judgment because Parker's sexual

assault claim was baseless. (Case One, ECF No. 132, PageID.814.) The undersigned agrees.

As discussed in the PREA investigation report, video evidence of the alleged sexual assault by CO Ford was reviewed and all persons involved were questioned. (Case One, ECF No. 132-4, PageID.878-882.) Based upon the evidence found during the investigation, Sgt. Belanger concluded that Parker's allegation was fictitious. (*Id.*) After making her conclusion, Sgt. Belanger issued Parker a misconduct ticket for interfering with the administration of prison rules. (Case Two, ECF No. 34-5, PageID.324.)

After reviewing the Defendants' video evidence, which is discussed in Section (i), the undersigned concludes that Parker's claims against CO Ford are meritless. A prisoner does not have a right to make false claims against prison officials. The video evidence shows that Parker's claim against CO Ford was meritless. Thus, Parker's complaints about Ford do not constitute protected conduct and Sgt. Belanger's misconduct ticket was issued for a legitimate reason.

## V.    Parker's Eighth Amendment Failure-to-Protect Claims

The Eighth Amendment requires that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim against prison officials based on their failure to protect the plaintiff from attack by other inmates, a plaintiff must present evidence showing that the defendants' conduct amounted to "deliberate indifference" to a known risk of harm. *Farmer*, 511 U.S. at 837; *Woods v. Lecureux*,

23

110 F.3d 1215, 1222 (6th Cir. 1997).  Deliberate indifference includes both objective and subjective elements.  *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).  The objective element requires the harm to be "sufficiently serious."  *Id*. (quoting *Farmer*, 511 U.S. at 834).  Therefore, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  *Id*.  The subjective element focuses on whether prison officials "had a sufficiently culpable state of mind."  *Id*.  To meet the subjective component, plaintiffs must show facts establishing at least a genuine dispute: (1) that defendants "subjectively perceived facts from which to infer a substantial risk" of harm to plaintiff; (2) that defendants "did in fact draw the inference;" and (3) that defendants "then disregarded that risk."  *Richko v. Wayne Cty.*, 819 F.3d 907, 915–16 (6th Cir. 2016).  A prison official has disregarded the risk when he or she "fail[s] to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found.  *Id*. at 835.  It is not enough that the official "should" have perceived a significant risk but did not.  *Id*.

### a.  Inspectors Miller and Brown (Case One, Claim Two)

Parker contends that Inspectors Miller and Brown violated his Eighth Amendment rights, on January 22, 2018, by failing to protect him from a violent and overtly racist environment.  Defendants specifically challenge the subjective component of Parker's claim (whether Inspectors Miller and Brown were aware of a serious risk of harm and deliberately chose to act indifferently toward the risk).  After

a careful review of the record, the undersigned concludes that there is no genuine issue of fact relating to this claim because Parker failed to establish that Inspectors Miller and Brown behaved indifferently toward a risk of harm on the date in question.

In support of his claim, Parker directs the Court's attention to his own statements in his verified complaint (Case One, ECF No. 1) and affidavit-response (Case One, ECF No. 135), and his January 16, 2018 letter to Warden Horton, Inspector Miller and Inspector Brown (Case One, ECF No. 135-2, PageID.964). Parker attested that, on January 16, 2018 (the day Parker was transferred to URF), he mailed a letter to Warden Horton, Inspector Miller, and Inspector Brown that stated that unnamed officers at URF would hang or stab him.  (Case One, ECF No. 1, PageID.6; Case One, ECF No. 135, PageID.937.)  The letter is shown below.

```
                              Bruce-X Parker #593090
                                  lock:Lime 215
                                January 16, 2018

        TO:
        Warden Horton
        Inspectors Miller, Brown

        Re: Officers threatening my life


        Gentlepersons,

           I'm writing seek assistance and protection from officers at your facility who has
        threatened to have me hung or stabbed if I ever returned to Chippewa. These officers
        have already been watching me and smirking and making little subtle comments to me.
        I'm afraid and I know there threats are real. Please help me.



                              Respectfully submitted,



        CC: File
```

(Case One, ECF No. 135-2, PageID.964.)

Defendants direct the Court's attention to Parker's deposition testimony (Case One, ECF No.132-2, PageID.848; Case One, ECF No. 138-1) to show that Parker admitted that he "did not notify either Miller or Brown of any supposed threat or harm in person until February 1, 2018." (Case One, ECF No. 132, PageID.786-787.) Essentially, Defendants contend that Parker did not notify Inspectors Miller and Brown until well-after January 22, 2018 (the date on which Parker's claim is based) about a serious risk of harm. Thus, the letter fails to show that Defendants knew of a substantial risk of harm to Parker on January 22 and disregarded that risk.

Indeed, Parker failed to develop the record to satisfy the subjective component (that Inspectors Miller and Brown were aware of a serious risk of harm to Parker and disregarded the risk) in several ways. First, there is no evidence that shows that Inspectors Miller and Brown actually received the January 16, 2018 letter. Second, even if Inspectors Miller and Brown did receive the letter, the letter speaks only of a vague risk of serious harm from unidentified URF Officers based upon "smirking" and making "subtle comments" to Parker. (Case One, ECF No. 135-2, PageID.964.) More importantly, the letter fails to identify any of the Officers responsible for the threats. Furthermore, in the letter, Parker says that he was threatened with harm if he ever returned to URF. The implication is that Parker was warned at some point prior to his return. But Parker does not state when this warning took place.

Perhaps, Parker could establish an inference that Inspector Miller *should* have been aware of a serious risk of harm based on their interactions in 2015 and 2016.

(*See* Case One, ECF No. 138-1, PageID.1005-1006 (Parker swore that he used to complain to then-Captain Miller in URF's chow hall about CO Pawley threatening Parker with hanging).)  But the United States Supreme Court has explained that it is not enough that the official "should" have perceived a significant risk but did not. *Farmer*, 511 U.S. at 835.  Inspectors Miller and Brown needed to "in fact draw the inference" that a significant risk of harm existed.  *Richko*, 819 F.3d at 915–16.

In summary, without evidence showing that Inspectors Miller and Brown were aware of a serious risk of harm to Parker on or about January 22, the undersigned concludes that there is no genuine issue of fact that Parker failed to establish the subjective component.

### b.  Warden Horton (Case One, Claim Four)

On January 24, 2018, Parker submitted a grievance complaining about Warden Horton's failure to correct deficiencies to URF physical structure, which resulted in a greater risk of sexual harassment.  Accordingly, Parker contends that Warden Horton violated his Eighth Amendment rights by failing to physically alter the prison's layout to better protect prisoners from sexual abuse.  (Case One, ECF No. 1, PageID.7.)  For the following reasons, the undersigned concludes that Parker failed to establish a genuine issue of fact as to both the objective and subjective components of his Eighth Amendment failure-to-protect claim against Horton.

With respect to the objective component (whether Parker was housed under conditions that posed a serious risk of harm), there is insufficient evidence to establish a genuine issue of fact.  The only evidence that speaks to a risk of sexual

abuse before or on January 24, 2018 is Parker's testimony in his verified complaint (Case One, ECF No. 1), his affidavit response (Case One, ECF No. 135), and his grievances submitted to the MDOC.  In both Parker's verified complaint and affidavit response, he neglected to attest to any facts that occurred prior to or on January 24, 2018 that demonstrate a serious risk of sexual harassment.  According to Parker, when he complained about a sexual assault incident on January 31, 2018, he alleged that an unknown Corrections Officer abused him during an inappropriate shake-down.  The sexual assault allegation provided no indication as to how URF's physical structure played a role in his alleged sexual assault.

Moreover, Parker's grievances are not reviewable as evidence of a serious risk of sexual harassment during this summary judgment proceeding because they are self-serving, unsworn statements.  *See Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) (holding that unsworn statements "must be disregarded because a court may not consider unsworn statements when ruling on a motion for summary judgment") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970)).  Without any evidence to establish how URF's physical structure caused an increased risk of sexual assault, the undersigned concludes that there is no genuine issue of fact and Parker failed to establish the objective component.

With respect to the subjective component (whether Warden Horton was aware of a serious risk of sexual harassment but chose to do nothing), Parker failed to establish a genuine issue of fact.  The undersigned concludes that there is no genuine issue of fact because there is no evidence that Warden Horton knew that the

structural design of URF caused a serious risk of sexual assault.  According to Parker, the only communication directed toward Warden Horton prior to January 24, 2018 was his vague January 16, 2018 letter (which did not discuss URF's structural design or sexual harassment) and grievances regarding abusive conduct by other URF employees.  (Case One, ECF No. 1, PageID.5-8; Case One, ECF No. 135, PageID.936-939.)  Further, by Parker's own admission, the first time he complained about a sexual assault occurred on January 31, 2018.  (Case One, ECF No. 1, PageID.9; Case One, ECF No. 135, PageID.941.)  Because Parker's sexual assault allegation complaint was made after the date of his alleged sexual assault and because there is no evidence linking his sexual assault allegation to URF's physical structure, the undersigned concludes that Parker failed to establish a genuine issue of material fact as to the subjective component (that Warden Horton knew of a serious risk of sexual assault because of URF's physical structure).

### c. Warden Horton, Inspector Miller, and Inspector Brown (Case One, Claim 8)

Parker alleged that, on February 2, 2018, Warden Horton, Inspector Miller, and Inspector Brown failed to protect him from harms that they were warned about. (Case One, ECF No. 1, PageID.11.)  Without the benefit of more specific language, the undersigned assumes that Parker means to say that the Defendants failed to protect him (1) from alleged harassment from Officers in retaliation for filing grievances, and (2) from an alleged sexual harassment that occurred during a shake-down.  Parker fails to present evidence establishing a genuine issue of fact with respect to the subject component of either version of his claim.  Parker does not allege

facts indicating that Horton, Miller and Brown knew about the retaliation.  And, with respect to the sexual assault version of the claim, Parker only informed MDOC officials about the alleged sexual assault a week or more *after* the sexual assault occurred.  As a result, it would not be possible for Defendants to have been deliberately indifferent to this serious risk of harm because they did not learn of it until later.

## VI.    Parker's Only Civil Conspiracy Claim (Case One, Claim 15)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged co-conspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  In the context of this claim, Parker alleges that Hearing Officer Pawley knowingly found him guilty of a false misconduct ticket to appease Warden Horton and Belanger.  (Case One, ECF No. 1, PageID.17.)  Essentially, according to Parker, the trio conspired to retaliate against him for the exercise of his First Amendment rights.

Defendants request summary judgment on this conspiracy claim for three reasons: (1) because Parker was properly found guilty of the misconduct ticket, (2) because there is no valid underlying constitutional violation, and (3) citing *Johnson*

*v. Hills & Dales General Hospital*, 40 F.3d 837, 840-41 (6th Cir. 1994), because Defendants acted within the scope of their duties, each of which would preclude a conspiracy claim.  (Case One, ECF No. 132, PageID.830-833.)  The undersigned respectfully disagrees with these arguments.

First, with respect to the validity of the misconduct ticket,[10] the parties present competing evidence.  On one hand, Defendants direct the Court's attention to Parker's URF Investigations Packet (Case One, ECF No. 132-4), Detective-Sgt. Johnson's Affidavit (Case One, ECF No. 132-5), and Belanger's affidavit (Case One, ECF No. 132-6).  In sum, Defendants' evidence shows that Defendants investigated Parker's January 2018 sexual assault allegation and found no corroborating evidence that suggested the assault happened.  Due to the lack of corroborating evidence and Parker's uncooperative behavior during the investigation (Parker failed to provide Defendants one concrete detail), Defendants concluded that Parker's allegation was fictitious.  Belanger then issued Parker a misconduct ticket for filing a false sexual assault allegation.  On the other hand, Parker attests that he was sexually assaulted during a shake-down by an unknown Officer on an unknown date in January 2018. (Case One, ECF No. 1, PageID.9; Case One, ECF No. 135, PageID.941-942.)  Parker further swears that during a meeting with Belanger and others to investigate his sexual assault, Belanger told him that she does not believe prisoners because all prisoners "deserve to be punished" and that she would issue him a misconduct ticket

---

[10]    The relevant misconduct ticket was issued to Parker for interference with the administration of rules for falsifying his January 2018 allegation against an unknown officer.

"at the conclusion of this Kangaroo Investigation." (Case One, ECF No. 1, PageID.9.) At the summary judgment stage, the issue is whether a genuine issue of material fact remains. Fed. R. Civ. P. 56(a). As noted above, Parker's conspiracy-to-retaliate claim cannot be dismissed simply because he was found guilty of the misconduct ticket.[11] Here, as a result of Parker's attestations, the undersigned concludes that there is a genuine issue of fact as to the validity of Parker's misconduct tickets. Thus,

The Defendants argue that Parker's conspiracy-to-retaliate claim must be dismissed because there was no underlying constitutional violation. The elements of a First Amendment retaliation claim are stated above in Section VI. In both Parker's verified complaint and affidavit-response, he states that Defendants issued and found him guilty of a false misconduct ticket because Parker was filing complaints about issues in the prison.   (Case One, ECF No. 1, PageID.17; Case One, ECF No. 135, PageID.946-947.)  Parker's statement is sufficient to establish a genuine issue as to his First Amendment retaliation claim.

Finally, Defendants third argument misreads the holding in *Johnson*, 40 F.3d at 840-841.  In *Johnson*, the Court of Appeals held that employees acting outside of their employment duties could form a conspiracy with their employers (principals). *Johnson*, 40 F.3d at 841.  As such, a plaintiff cannot claim that a civil conspiracy exists between a defendant-employer and a defendant-employee when the employee was acting within the scope of his or her duties. *Id*.  Here, the MDOC – who would be the employer in this case – is not a party in this case and Parker is alleging a

---

[11]        *See supra*, footnote 7.

conspiracy amongst fellow employees.   Therefore, there is no legal support for Defendants' argument that by acting within the scope of their duties, they are shielded from personal liability in a civil conspiracy claim.[12]

## VII.   Parker's Only Fourteenth Amendment Procedural Due Process Claim (Case Two, Claim 1)

Parker alleges that Hearing Officer (HO) Burke violated his Fourteenth Amendment due process rights when HO Burke failed to consider evidence during two of Parker's misconduct hearings on October 16, 2018.  (Case Two, ECF No. 1, PageID.6-8.)   Defendants argue that Parker's claim cannot survive summary judgment because Parker did not provide enough evidence to satisfy the claim's threshold question – whether Parker was subject to an atypical and significant hardship.  (Case One, ECF No. 132, PageID.833-835.)  The undersigned agrees with Defendants.

The Supreme Court has long held that the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that the Court "reject[s] at the outset the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause").   In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process

---

[12]      It should be noted that the Defendants do not argue that Parker failed to allege facts showing an agreement to violate his rights.

Clause.  According to *Sandin*, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486-87; *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Indeed, confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), *abrogated on other grounds by Sandin*, 515 U.S. 472.  Thus, administrative segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship.  515 U.S. at 484.  Similarly, the Sixth Circuit has held that placement in administrative segregation for a relatively short period of time does not trigger the protections of due process. *Rimmer-Bey*, 62 F.3d at 790-91; *see, e.g., Joseph*, 410 F. App'x at 868 (holding that 61 days in segregation is not atypical and significant).  The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest.  *See, e.g., Baker*, 155 F.3d at 812-23 (two

34

years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one-year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding).

By Parker's own admission, when HO Burke inappropriately adjudicated him guilty of both misconduct tickets on October 16, 2018, Parker was simply sanctioned to ten days in the "Toplock" and the loss of privileges for 100 days. (Case One, ECF No. 135, PageID.958.) By comparison to the prison sanctions cited in the case law above, Parker's punishment does not implicate a liberty interest. As a result, the undersigned concludes that Parker failed to establish a genuine issue of as to a Fourteenth Amendment due process claim against HO Burke.

## VIII. Qualified Immunity

As an alternative argument, Defendants move to dismiss Parker's constitutional claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d]

that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The analysis entails a two-step inquiry.  *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).  First, the court must "determine if the facts alleged make out a violation of a constitutional right."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)).  Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it."  *Id.* (citing *Pearson*, 555 U.S. at 232).  A court may address these steps in any order.  *Id.* (citing *Pearson*, 555 U.S. at 236).  A government official is entitled to qualified immunity if either step of the analysis is not satisfied.  *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred.  *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The court considers the state of the law at the second step.  As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate."  *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  As explained by the Supreme Court:

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per

36

curiam), which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " *al–Kidd*, *supra*, at 741–742, 131 S.Ct. 2074 (quoting *Wilson v. Layne*, 526 U.S. 603, 617, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. *See Reichle*, 566 U.S., at 666, 132 S.Ct. 2088. Otherwise, the rule is not one that "every reasonable official" would know. *Id.*, at 664, 132 S.Ct. 2088 (internal quotation marks omitted).

The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This requires a high "degree of specificity." *Mullenix v. Luna*, 577 U.S. ——, ——, 136 S.Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam). We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, *supra*, at 2023 (internal quotation marks and citation omitted). A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." *Anderson*, *supra*, at 641, 107 S.Ct. 3034. In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.'" *Mullenix*, *supra*, at 309 (quoting *Anderson*, *supra*, at 640–641, 107 S.Ct. 3034; some alterations in original).

*D.C. v. Wesby*, 138 S. Ct. 577, 589–90 (2018).

For the reasons set forth above in Sections IV, V, VI, and VII, Parker has failed to establish a genuine issue of material fact with respect to the following claims:  Case

One, claims 2, 4, 5, 8, 14, and 20; Case Two, claims 1, 4, and 5. As a result, these claims are also barred by the doctrine of qualified immunity.

Parker's remaining retaliation claims and conspiracy-to-retaliate claims are based on his grievances, or at least threats to file grievances. Prisoners have a clearly established right to file grievances. *Hill*, 630 F.3d at 472 ("Such protected conduct includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf'") (quoting *Herron*, 203 F.3d at 415). As a result, Parker's remaining claims are not barred by the doctrine of qualified immunity.

## IX.    Recommendation

The undersigned respectfully recommends that this Court grant Defendants' motion for summary judgment as to claims 2, 4, 8, 14, and 20 in Case One, and claims 1, 4, and 5 in Case Two. The undersigned, however, respectfully recommends this Court deny Defendants' motion as to Parker's remaining claims.

The undersigned also notes that there are two issues with respect to Residential Unit Manager (RUM) Batho in Case One and Unknown Defendant in Case Two. In Case One, the Court adopted the undersigned's recommendation (ECF No. 70, PageID.488-489, 494-496) that the claims against RUM Batho be dismissed because Parker failed to exhaust his administrative remedies. (ECF No. 71.) RUM Batho has not, however, been terminated from the case. Accordingly, the undersigned recommends that Batho be dismissed now. In Case Two, the docket does not list an unknown Defendant. However, the Court granted the parties' stipulation that reduced Parker's claims to five, one of which – claim 5 – failed to identify a

defendant.  (ECF No. 37.)  To the extent that an Unknown Defendant remains in the case as the result of the aforementioned stipulation, the undersigned recommends that this Defendant be dismissed because the Defendant has never been served. According to Fed. R. Civ. P. 4(m), "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Here, more than two years have passed since Parker filed his verified complaint on October 29, 2018.  (Case Two, ECF No. 1.)

If the Court accepts this recommendation, claims 1, 3, 7, 10, 13, 15, and 18 from Case One will remain, and claims 2 and 3 from Case Two will remain.

Dated:  March 9, 2021                          /s/ *Maarten Vermaat*
                                               MAARTEN VERMAAT
                                               U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).